**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio, *motion for pro hac vice forthcoming*
nmigliaccio@classlawdc.com
Jason S. Rathod, *motion for pro hac vice forthcoming*
jrathod@classlawdc.com
412 H Street NE, Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520

**LEVIN SEDRAN & BERMAN**
Daniel C. Levin,
dlevin@lfsblaw.com
Charles E. Schaffer, motion for *pro hac vice* forthcoming
cschaffer@lfsblaw.com
Nicholas J. Elia, motion for *pro hac vice* forthcoming
nelia@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663

**BAIRD LAW FIRM, APC**
William A. Baird, Esq. (SBN 192675)
tbaird@bairdlawfirm.org
2625 Townsgate Road, Suite: 330
Westlake Village, Ca. 91361
Telephone:  (805)-267-1209
*Counsel For Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORGE MASTRANGELO AND MONIQUE VASQUEZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICAN HONDA MOTOR, CO., INC., a corporation; and HONDA MOTOR CO., Ltd, a business entity;<br><br>    Defendants. | CASE NO. 2:21-cv-01150<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Breach of Express Warranty<br>(2) Breach of Implied Warranty of Merchantability<br>(3) Common Law Fraud<br>(4) Violations of the Song-Beverly Consumer Warranty Act for Breach of Express Warranty, Cal. Civ. Code §§ 1790-1795.8<br>(5) Violations of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code §§ 1790-1795.8<br>(6) Violations of the California Legal Remedies Act, Cal. Civ. Code. §§ 1750—1785<br>(7)Violations of Cal. Bus. & Prof. Code §§ 17200-17210<br>(8)Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

-1-

Plaintiffs Norge Mastrangelo and Monique Vasquez (together, "Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, bring this action against Defendants American Honda Motor Co., Inc. ("AHM") and Honda Motor Co. ("HMC") (collectively, "Honda" or "Defendants"). Plaintiffs allege the following based on personal knowledge as to their own acts and based upon the investigation conducted by their counsel as to all other allegations:

## INTRODUCTION

1.     Plaintiffs bring this consumer class action lawsuit on behalf of all current and former owners and lessees of the following Honda vehicles: 2017-2019 Honda Accords and 2017-2019 CR-Vs (collectively, the "Class Vehicles"). Defendants manufactured, marketed, distributed, and sold the Class Vehicles without disclosing to purchasers and lessees that the Class Vehicles were sold with defective batteries that are too small and suffer from parasitic draw, which cause the batteries to fail prematurely, marooning consumers with a disabled vehicle (the "Battery Defect" or "Defect"). The Defect inevitably manifests, but does so unpredictably, which poses considerable safety risks for drivers and their passengers who may be left stranded with an inoperable vehicle. Additionally, drivers are faced with unanticipated expenses such as premature battery replacement, diagnosis, emergency roadside service, and mobile battery packs.

2.     Honda has been aware of the Battery Defect since at least February 2017 when it sent a notice to its service managers and advisers that it would like

to collect batteries from 2016-2017 Honda Accords where the customer complained of a "no-start condition." In 2018 and 2019, with the problem persisting, Honda announced a battery collection program requesting batteries, this time, from the 2018-2019 Accords, as well as 2017-2018 CR-Vs and 2016-2018 Pilot Touring/Elites.

3.      Despite knowing about the Defect, Honda has not successfully fixed it nor disclosed the existence of the Defect to consumers.

4.      Honda likewise has failed to live up to its warranty obligations. Drivers who bring their car to the dealership under warranty are often told battery tests indicate the battery is functioning normally. At best, Honda simply replaces the defective battery with another battery of the same size or performs software updates that fail to fully remedy the Defect. This is a temporary and ineffective solution, which exposes Class members to repeat battery failure.

5.      Defendants' warranty limitations as to time and mileage limits are unconscionable and unenforceable, because they knowingly sold a defective product while concealing said defect from purchasers.  Defendants compounded their unfair and deceptive behavior post sale when they continued to conceal the cause of the Defect, thus ensuring further damage to the Class Vehicles and increased costs to Class members.

6.      The Defect is substantially certain to manifest in the Class Vehicles and renders the Class vehicles unsuitable for their intended purpose: transportation. Many Class Members have had a battery die more than once.

7.      Plaintiffs and Class members have been deprived of the benefit of the bargain because Defendants failed to disclose the Battery Defect. Accordingly, Plaintiffs seek relief both for themselves and for other owners or lessees of the Class Vehicles.

## II.      JURISDICTION, VENUE AND GOVERNING LAW

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one Plaintiff is a citizen of different state than Defendants. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because AHM is headquartered in this district. Additionally, Defendants transact business in this district and are subject to personal jurisdiction in this district, and are citizens of this district. Defendants have also advertised in, and from, this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

10.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within this district and throughout the United States.

### III.   PARTIES

#### A.   Plaintiffs

##### 1. Norge Mastrangelo

11.     At the time of sale, Norge Mastrangelo was a citizen and resident of California, but is presently a citizen of Connecticut and resides in Shelton, Connecticut.

12.     On or about September 2017, Plaintiff Mastrangelo purchased a 2017 Honda Accord Sport from Hayward Honda in 24919 Mission Blvd., Hayward, CA 94544.

13.     Plaintiff was in the market for a mid-sized, affordable sedan and, in purchasing his Class Vehicle, relied on Honda's representations about the functionality and features of the vehicle, including its safety. In making representations about the Class Vehicle, Honda never disclosed the Defect. Plaintiff Mastrangelo greatly values vehicle safety. Disclosure of the Defect would have affected his purchasing decision.

14.     On or around May 12, 2020—less than three years after buying his car—Plaintiff Mastrangelo first experienced the Defect. His vehicle had 44,318

miles. The vehicle was parked in front of his house and Plaintiff found that it would not start. He jumpstarted the vehicle with the use of his mother's vehicle, which was nearby. The car appeared to work fine thereafter and Plaintiff drove the vehicle to Limitless Towing & Repair located in 78 Bridgeport Ave., Shelton, CT 06484. The mechanic removed and replaced the alternator, at a total cost of $495.00.

15.    Plaintiff Mastrangelo's vehicle manifested the Defect again eleven days later, on May 23, 2020. Plaintiff's girlfriend had taken the vehicle to work and found that it would not start. Plaintiff once again contacted Limitless Towing & Repair in Shelton, Connecticut, and the car was towed to the mechanic's shop. Unsure if the issue was a result of his labor, the mechanic contacted a local Honda dealership and was told to check the vehicle's power-train control module, or PCM. The dealership did not inform the mechanic that the vehicle's condition was a result of the Defect. The mechanic checked all the wires running from the alternator to the PCM. Wire replacement and subsequent testing returned wrong voltage levels. The mechanic removed and replaced the PCM and also installed a new battery. The total cost for the replacement of the PCM, the battery, and the towing left Plaintiff with a $1,335.00 bill.

16.    Plaintiff Mastrangelo has never received a reimbursement from Honda for the costs associated with the Defect because—while within three years of purchasing the car—the latent Defect first manifested outside 36,000 miles.

17.     Had Mr. Mastrangelo known of the Defect at the time of sale, he would not have purchased the vehicle or would have paid less for it. Instead, due to Honda's omissions and unconscionable warranty limitations, he has had to pay more for it.

### 2. Plaintiff Vasquez

18.     Plaintiff Monique Vasquez is a resident of California and resides in Stockton, California.

19.     On or about August 2018, Plaintiff Vasquez leased a 2018 Honda Accord Sport from Lodi California in 1700 South Cherokee Lane, Lodi, CA 95240.

20.     Plaintiff was in the market for a mid-sized, affordable sedan and, in leasing her Class Vehicle, relied on Honda's representations about the functionality and features of the vehicle, including its safety. In making representations about the Class Vehicle, Honda never disclosed the Defect. Plaintiff Vasquez greatly values vehicle safety. Disclosure of the Defect would have affected her leasing decision.

21.     On or around August 2020—within two years of leasing her car— Plaintiff Vasquez experienced the Defect. Her vehicle had roughly 39,000 miles. The vehicle was parked at her home and she found that it would not start at all. She had no indication that the battery had gone bad. Plaintiff repeatedly attempted to turn the car over, eventually managing to do so without the use of jumper

cables. She continued in this manner for about two weeks before visiting a dealership.

22.     Plaintiff visited the Lodi Honda dealership at 1700 S. Cherokee Ln, CA 95240 on August 13, 2020. She believes a diagnostic test was performed on the vehicle that focused attention on the battery. The dealership replaced the battery on the same day. Honda's replacement battery is warranted for three years, regardless of mileage. Plaintiff Vasquez was charged $214.97 total for the replacement of the factory-installed battery because—even though she had the car for only two years—the latent Defect manifested at 39,000 miles, which the dealership said put her outside of the warranty's limitations. She has never received a reimbursement from Honda.

23.     Had Ms. Vasquez known of the Defect at the time of sale, she would not have purchased the vehicle or would have paid less for it to account for the defect. Instead, because of Honda's omissions at the point of sale, and after, as well as their unconscionable warranty limitations, she has paid more.

**B. Defendants**

24.     Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States. Furthermore, Defendants design, develop, manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the Class Vehicles

25.     Defendant Honda Motor Co, Ltd. is a Japanese business entity headquartered in Tokyo ("HMC"). HMC, through its various entities, designs, manufactures, markets, distributes and sells Honda and Acura brand automobiles in California and multiple other locations in the United States

26.     Defendant American Honda Motor, Co., is incorporated in California and headquartered in Torrance, CA ("AHM"). AHM is responsible for distribution, marketing, servicing, and sales of Honda and Acura brand cars in the United States.

27.     There exists, and at all relevant times has existed, a unity of ownership between HMC, AHM, and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

28.     Upon information and belief, Defendant HMC communicates with Defendant AHM concerning virtually all aspects of the Honda and Acura products it distributes within the United States. For example, Defendants have formalized a global, quality-assurance process, Global Honda Quality Standards (G-HQS) to "increase the quality of Honda brand products manufactured and sold around the world. Each site complies with G-HQS to enable a uniform quality assurance

system across the board and contribute to quality assurance not only in production activities but also in logistics and services."[1]

29.     Upon information and belief, Plaintiffs allege that at all times mentioned herein, each Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

30.     Upon information and belief, the design, manufacture, distribution, installation and decisions about manufacturer communications (such as about recalls, warranty coverage, and disclosure of the defect) of the batteries in the Class Vehicles as it relates to the Defect within the Class Vehicles were executed exclusively by Defendants HMA and AHM and/or their agents.

31.     In this Complaint, when a reference is made to any conduct of the Defendants, the allegation encompasses all acts, deeds or conduct accomplished by or through one or more of its officers, directors, agents, employees, or representatives who was actively involved in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

---

[1] https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf

32.     Defendants sell cars in part through their authorized dealers. These dealers are authorized to represent Honda vehicles—including the Class Vehicles discussed herein— such that receiving information from an authorized Honda dealership is an opportunity to receive information directly from Defendants.

33.     Authorized Honda dealers are Honda's agents. Honda's logo is displayed at these dealerships; Defendants' brochures and other marketing materials are displayed and distributed at these dealerships. By the terms of the express warranty, Honda owners and lessees are required to return to dealerships for any and all repairs. Authorized dealerships also receive technical bulletins— written by Defendants—which describe potential vehicle problems and mandate specific repairs or push required software updates. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015).

34.     A dealership agreement governs Defendants' relationships with its authorized dealerships. This agreement imposes a number of reciprocal commitments on both parties. Among other things, it requires:[2]

- that Honda offer to dealers "general and specialized product information and  to provide field sales personnel to advise and counsel Dealer's sales organization on sales-related subjects such as

---

[2] A copy of Honda's Automobile Dealer Sales and Service Agreement (Dealership Agreement), filed with the U.S. Securities and Exchange Commission and is available at https://www.sec.gov/Archives/edgar/data/1019849/000095012402000556/k66280ex10-2_3.txt .

merchandising, training, and sales management," (Dealership Agreement § 1.2.A), as well as "general and specialized service and parts training courses" (id. § 1.2.B);

- that Honda make available "such sales, service and parts manuals, brochures, special service tools and equipment and other data for Honda Products as American Honda deems necessary for Dealership Operations" (id. § 1.4);

- that Honda "agree to maintain a nationwide system of authorized dealerships of Honda Products. In order that those authorized dealers may be assured of the benefits of comprehensive advertising of Honda Products, American Honda agrees to establish and maintain general advertising programs in such manner and amount as it may deem appropriate and will make sales promotion and campaign materials available" to dealers (id. § 1.5);

- that dealers "promote and sell, at retail, Honda Products, and . . . promote and render service, whether or not under warranty, for those products within the Dealer's Primary Market Area" (id. § 3.1);

- that dealers "agree[] to establish and maintain an adequate and trained sales and customer relations organization," and "agree[] to establish and maintain a complete service and parts organization,

including a qualified service manager and a qualified parts manager and a number of competent service and parts personnel adequate to care for the service obligations to be performed by Dealer under the Agreement" (id. § 3.3);

- that dealers "agree[] to acknowledge, investigate and resolve satisfactorily all complaints received from owners of Honda Products in a businesslike manner in order to secure and maintain the goodwill of the public" and shall "promptly report[]"  "[a]ny complaint received by Dealer which . . . cannot be readily remedied" (id. § 3.4);

- that dealers "will follow all reasonable directives, suggestions and policies of American Honda. All written directives, suggestions and policies of American Honda contained in any of its bulletins or manuals, which are in effect as of the date of the Agreement or are issued thereafter, will be deemed a part of the Agreement" (id. § 3.9);

- that dealers "perform any and all warranty, recall, product improvement or product update service in compliance with instructions and directives issued by American Honda, regardless of where the Honda Product involved was purchased," and they will not charge for such services "to protect and maintain the goodwill and

reputation of Honda Products and the Honda Trademarks" (id. § 3.12);

- that dealers "agree[] that [they] will expressly incorporate any warranty furnished by American Honda with a Honda Automobile as a part of each order form or other contract for the sale of such Honda Automobile by Dealer to any buyer," "agree that [they] will deliver to the buyer of all Honda Products, at the time of delivery of such Honda Products, copies of such applicable warranties as may be furnished by American Honda," and "agree[] to abide by and implement in all other respects American Honda's warranty procedures in effect at the time of Dealer's sale" (id. § 4.2);

- that dealers "agree[] to develop and actively utilize programs for the advertisement and promotion of Honda Products and its servicing of such products." The provision further states: "Such programs will include the prominent display and use or demonstration of Honda Automobiles. Dealer further agrees to cooperate with all reasonable promotional programs developed by American Honda" (id. § 5.1);

- that dealers "agree[] that [they] will not advertise, promote or trade in Honda Products or the servicing thereof in such a manner as to injure or be detrimental to the goodwill and reputation of American Honda

and the Honda Trademarks." Moreover, the dealers further "agree[]
that [they] will not publish or otherwise disseminate any
advertisement or announcement or use any form or media of
advertising which is objectionable to American Honda. Dealer agrees
to discontinue immediately any advertisement or form of advertising
deemed objectionable upon request of American Honda" (id. § 5.2);

- that dealers, "[s]ubject to applicable federal, state or local ordinances,
  regulations and statutes, . . . agree[] to erect and maintain, at the
  Dealership Location, at Dealer's expense, authorized product and
  service signs of types required by American Honda, as well as such
  other authorized signs as are necessary to advertise the Dealership
  Operations effectively and as are required by American Honda" (id. §
  5.3);

- that dealers are "granted the nonexclusive right and license to use and
  display the Honda Trademarks at the Dealership Premises" but such "
  use or display is limited to that which is necessary in connection with
  the sale, offering for sale and servicing of Honda Products at retail at
  the Dealership Location. Dealer agrees that it will promptly
  discontinue the use of any of the Honda Trademarks or change the
  manner in which any of the Honda Trademarks is used when
  requested to do so by American Honda" (id. § 6.2);

- that dealers "agree[] to keep complete and current records regarding the sale and servicing of Honda Products and to prepare for American Honda such reports, based on those records, as American Honda may reasonably request

- (id. § 7.3);

- that dealers "agree[] to permit, during reasonable business hours, American Honda, or its designee, to examine, audit, reproduce and take copies of all reports, accounts and records pertaining to the sale, servicing and inventorying of Honda Products, including, but not limited to, records in support of claims for reimbursement or credit from American Honda, and with the prior approval of Dealer, which approval will not be unreasonably withheld, to interview Dealer employees with respect thereto" (id. § 7.4);

- that the Dealership Agreement is terminated where a dealer fails "to provide adequate representation, promotion, sales or service, including warranty work" (id. § 9.4.N);

- After the termination of an agreement, dealers agree to cease using any Honda trademark and symbols; "will remove all signs bearing any Honda Trademark and will destroy all stationery, repair orders, advertising and solicitation materials, and all other printed matter

bearing any Honda Trademark or referring directly or indirectly to American Honda or Honda Products in any way which might make it appear to members of the public that Dealer is still an authorized dealer and "will also deliver to American Honda, at American Honda's place of business, or to a person designated by American Honda, or will destroy the same upon request by American Honda, any and all technical or service literature, advertising and other printed material then in Dealer's possession which relates to Honda Products and which was acquired or obtained by Dealer from American Honda. Dealer will destroy any sign bearing a Honda Trademark which has not been repurchased by American Honda." (id. § 10.3).

## IV.    FACTUAL ALLEGATIONS

### A. The Class Vehicles

35.    The Honda Accord moniker comprises a number of automobiles but is most commonly associated with its four-door sedan model and has been one of the best-selling cars in the United States for decades.

36.    Honda advertised the 2017 Honda Accord as "a legend in its time" and touted that "innovative technology and inspiring performance make it more than a car." Honda also promised that every "Accord is equipped with advanced

safety features designed to help you and your passenger, mile after mile."[3] Their 2017 brochure offers a comprehensive list of features and driver assistive technology from smart entry, rain-sensing windshield wipers, lane watch, multiple collision detection systems, Bluetooth, Apple and Android connectivity—among many others. In short, the brochure describes a car that requires a significant electrical system to support it and promises a safe, reliable car—as long as the power works.

37.     The Honda CR-V is a compact, crossover sport-utility vehicle, a mid-range automobile fitting in between the smaller Honda HR-V and the larger Honda Pilot. Described as "a vehicle designed for a superior driving experience," Honda proclaims the consumer can "commute with confidence."[4] This vehicle also delivers "a wealth of standard features and driver and passenger conveniences, all backed by the Available Honda Sensing™ suite of safety and driver assistive technologies." Indeed, the brochure emphasizes this smorgasbord of features and technologies at least three times, claiming at one point that the vehicle "delivers more comforts and conveniences than ever."  Like the Accord, then, the CR-V is a power-hungry automobile with many impressive features that become inoperable when the battery dies.

---

[3] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/Accord-Coupe/Brochure/V3/MY17-Accord-Wave-2-Model-Site.pdf. Marketing for the 2018-2019 Accords makes similar safety and convenience claims.
[4] Marketing for the 2018-2019 CR-V makes similar safety and convenience claims.

38.     Since at least 2017, drivers and owners have complained about failing batteries in their Accords and CR-Vs. These batteries suffer from a defect that results in a parasitic draw on the vehicle's battery power and are also too small to power the vehicles' advanced electrical systems.

39.     A car battery is meant to provide a surge of electricity to start an engine, at which point the alternator takes over and powers the vehicle. Continuous and repeated draining down of batteries significantly shortens their lifespan. The Defect, therefore, necessitates more frequent—and unpredictable—battery replacement than is typical with non-defective vehicles. Replacing batteries, as well as the cost and time of emergency roadside assistance, towing and jump packs, will continue to be an ongoing expense and persistent problem for owners and lessees until Honda fixes the Defect.

**B. The Defect Poses a Significant Safety Hazard**

40.     In addition to the aggregating cost of battery replacement, the Defect poses substantial safety hazards because the Defect manifests in power failure and renders the Class Vehicle inoperable. As a result, drivers become stranded and must seek roadside assistance and utilize alternative means of transportation.

41.     When the battery fails, all electrical components lose power, which means that many safety features in the Class Vehicles cannot be used. This includes features like hazard lights, which are specifically designed to increase safety for a driver when their vehicle becomes disabled. Of course, the headlights

also will not work, increasing the danger for a stranded motorist and making it harder for roadside assistance to locate the disabled vehicle. Because the defect manifests unexpectedly, motorists might find themselves stranded in dangerous weather, or in an area with poor reception or no immediately available roadside assistance.

42.    If the car is locked when the battery fails, drivers will be unable to readily open their car, potentially stranding motorists for a time who left their phones or wallets in the car, unable to call for help. Children or pets might also become locked inside the vehicle for some time. Because of the severity of all of these risks, the Defect poses a clear safety hazard.

**C. Honda's Deficient Warranty Performance**

43.    Honda provides a three-year/36,000 mile New Vehicle Limited Warranty for the Class Vehicles. With limited exclusions, the New Vehicle Limited Warranty covers the entire vehicle—including the electrical system and battery, as well as "any part that is defective in material or workmanship under normal use." All repairs are free of charge.

44.    Honda also provides a "Replacement Battery Limited Warranty," which covers replacement batteries for 100 months. During the first 36 months/three years, a replacement battery will be installed free of charge under the terms of the New Vehicle Limited Warranty. "For the remaining 64 months (five years and four months) you will receive a credit toward the purchase of the

-20-

battery. This credit is based on the then-current retail price" and decreases each year. The owner/lessee is responsible for labor costs after the first 36 months/ three years.

45.     The Defect arises from defective materials and/or workmanship in the Class vehicles and is therefore covered under Honda's warranties. When owners and lessees bring their car for service, however, Honda regularly fails to tell those individuals that the batteries are defective. In fact, customers are often told their batteries are performing normally. At most, Honda instructs its technicians to replace the batteries in the Class Vehicles. But since Honda replaces the batteries with the same type of batteries or performs ineffective software updates without addressing the underlying cause of the premature battery failure, the Defect inevitably manifests again. Honda's warranties, then, provide only a temporary, ineffective solution.

46.     Moreover, because of the nature of the Defect, the defective battery is certain to fail after the expiration of the warranties, ensuring that consumers will continue to incur expenses for the Defect.

47.     Defendants' warranty limitations as to time and mileage limits are unenforceable here because they knowingly sold a defective product while concealing said defect from purchasers. When Defendants brought the Class Vehicles to market, they knew or should have known that the Vehicles were not as warranted through their extensive presale testing and other internal systems, like

their battery collection program. Class Members were unaware of the Defect, which was exclusively in Defendants' control. When Class Members demanded service under the warranty, Defendants also knew or should have known about the Defect through its post-sale testing, audits, replacement part orders, and consumer complaints. Many purchasers have alerted Defendants that there is something defective about the battery, and NHTSA database contains complaints that specifically notify Defendants about a failure of the warranty.

48.    Plaintiffs had no meaningful choice in determining these warranty limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class Members, and Defendants knew or should have known that the Class Vehicle was defective at the time of sale and that the battery was substantially certain to fail and otherwise impact the utility and safety of the Class Vehicles. Defendants concealed material facts about the defective battery both pre and post sale.

49.    The Defect impacts the core functionality of the Class Vehicles because—when it manifests—owners and lessees are unable to operate their automobile. Additionally, the random expression of the Defect ensures consumers cannot rely on their vehicles for transportation, clearly an unanticipated outcome for a purchaser of a new car. Honda's refusal to meet its obligations under these warranties transfers the costs of the Defect onto the customers, who purchase larger capacity batteries, battery chargers, roadside assistance, or are forced to pay

repair costs when the Defect manifests outside the warranty period simply to ensure they can use their vehicle for its intended purpose: transportation.

**D. Honda Had Superior and Exclusive Knowledge of the Defect**

50.     Defendants knew, or should have known, about the Defect through their exclusive knowledge of non-public, internal data about the Defect, including: (1) pre-release testing data; (2) their own records of customers' complaints from dealerships; (3) aggregate data from Defendants' dealers, including their repair records, orders and replacement parts sales data; (4) consumer complaints to the NHTSA and resulting notice from the NHTSA; (5) warranty and post-warranty claims; (6) testing conducted in response to owner or lessee complaints including Defendants' battery collection program; (7) other internal sources of aggregate information about the problem; and (8) external websites monitored by Defendants. Defendants were well aware—or should have been aware—of the Defect but failed to notify its customers of the nature and extent of the problems with Class Vehicles or provide any adequate remedy for the Defect.

51.     Defendants are experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Defendants conduct tests, including pre-sale testing, on incoming components, including the battery, to verify the parts are free from defects and meet Defendants' specifications. Based on the results of these tests, Defendants knew or should have known the battery

was defective and likely to put consumers in a dangerous position due to the inherent risk of the Defect.

52.     Honda's Global Honda Quality Standard (G-HQS) "is a set of fundamental standards supporting quality assurance and improvement activities in all domains based on Honda's Quality Cycle."[5] Management involved in this initiative meet regularly to share information. "To ensure high quality, Honda conducts comprehensive quality assurance activities from the dual perspective of design and manufacturing." For example, Honda establishes manufacturing control items and criteria for each part, assures quality parts from third-party suppliers through quality audits, and "subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify there are no quality issues." Honda also specifically implements a Line End Tester to inspect electronic control systems. Based on the processes formalized through G-HQS, Defendants knew or should have known the battery was defective and likely to put consumers in a dangerous position due to the inherent risk of the Defect.

53.     Honda's knowledge of the Defect in the Class Vehicles is demonstrated by a number of manufacturer communications. Manufacturer

---

[5]
https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf

communications are sent to dealers to assist in the repairs and maintenance of their cars. These communications are tracked by the NHTSA. Beginning in February 2017, Honda began sending a "Request for Parts" asking for 2016-2017 Honda Accord batteries. Specifically, Honda noted it was "investigating certain 2016-2017 Accord V6s with a customer complaint of a no-start conditions that requires the 12V battery to be replaced. To fully understand the cause of this condition, AHM would like to collect specific parts from the vehicle prior to you attempting a repair of any kind."[6]

54.     By 2019, Honda was describing a "new battery collection program" in communications with its dealerships. Honda now requested batteries from 2018-19 Accords, as well as 2017-18 CRVs, and 2016-18 Pilot Touring/Elites.[7] Noticeably, these new communications did not allude to any battery problems—despite the continuing and ongoing complaints from customers—but only referenced a "battery collection," thus concealing the reasoning for the collection. Despite these communications to the dealerships, and the ever-widening net of its investigation, Honda failed to disclose the existence of the Defect.

---

[6] https://static.nhtsa.gov/odi/tsbs/2017/MC-10108050-9340.pdf
[7] https://static.nhtsa.gov/odi/tsbs/2019/MC-10159033-0001.pdf. Honda has received a significant number of complaints regarding the Pilot's battery related to the auto-idle feature—with drivers complaining their cars do not restart when they stop for lights, stop signs, turning, or attempt to perform similar functions. The defect in the Pilot vehicles is outside the scope of the Complaint. However, the existence of this battery collection program—which targets only those models that have received a noteworthy number of power failure complaints—illustrates Honda's knowledge of the Defect at the heart of the Complaint. Additional complaints from NHTSA are attached hereto as **Exhibit A**.

55.     Consumer complaints to the NHTSA also suggest that Honda was aware of the Defect but chose to deny its existence.

56.     The Office of Defects Investigation within the NHTSA conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. All vehicle manufacturers, including Defendants, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns (which is backed by criminal penalties). Accordingly, Defendants have—or should be imputed—knowledge of any and all NHTSA complaints. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

57.     The following sampling of complaints to the NHTSA concerning the Class Vehicles demonstrates the manifestation of the Defect, the safety risk the Defect poses, and the Defendants' unwillingness to remedy the Defect.

### 2017-2018 Honda Accords:

| Complaint Date: Sept. 18, 2020 | NHTSA ID Number: 11359948 |
|---|---|
| USED ACCESSORY SYSTEM FOR 15 MINUTES TO VACUUM CAR WHILE LISTENING TO RADIO. ENTIRE SYSTEM WENT DEAD. COULD NOT MOVE SHIFT LEVER, CLOSE WINDOWS, OR MOVE THE CAR. SAME HAPPENED A YEAR AGO. HONDA SAYS ACCESSORY SYSTEMS USES SO MUCH ENERGY IT DRAINS THE SYSTEM. LONG TERM PROBLEM FOR THIS CAR. NEEDS TO BE FIXED. IT WAS STATIONARY IN AN AWKWARD LOCATION SO IT WAS IMPOSSIBLE TO LEAVE IT ||

WHERE IT WAS. HAD TO GET NEIGHBORS HELP WHO
LUCKILY HAD HAD THE SAME PROBLEM WITH HER
HONDA. MEANWHILE HONDA SAID THIS AM THAT THEY
WOULD NOT HONOR THE 100 MONTH WARRANTY ON
THEIR REPLACEMENT BATTERY PUT IN A YEAR AGO AS ITS
"COVERED UNDER THE 36 MONTH WARRANTY" WHICH
RAN OUT LAST AUGUST.

**Complaint Date: December 2,   NHTSA ID Number: 11331438
2019**

NOT A SAFETY ISSUE ?? SOMETHING KEEPS KILLING THE
BATTERY ON THE CAR .REPLACED BATTERY TWICE IF YOU
LEAVE FOR A WEEK THE BATTERY IS DEAD. HAVE A
COWORKER THAT HAS THE SAME YEAR AND MODEL WITH
SAME ISSUE.HAVE BROUGHT TO HONDA TWICE ONLY TO
BE TOLD THERE IS NOTHING WRONG??!! THEREFORE,STILL
AN ONGOING ISSUE PRESENTLY.

**Complaint Date: January 10,    NHTSA ID Number: 11327379
2020**

1/10/2020 CAR WOULDN'T START. NO PREVIOUS PROBLEMS.
CALLED HONDA ROADSIDE ASSISTANCE THEY PROVIDE A
JUMP START IN WHICH THE CAR STARTED. DROVE THE
CAR RIGHT TO DAVID HOBBS HONDA. THEY PERFORMED
TEST WHICH SAID EVERYTHING. 6/4/2020 MY CAR DID THE
EXACT SAME THING EXPECT THIS TIME I DID DRIVE TO
THE DEALERSHIP AFTER GETTING A JUMP START. LATER
THAT EVENING I WENT TO START THE CAR AND IT
WOULDN'T START. 6/5/2020 MORNING THE CAR WOULDN'T
START. IN ALL INCIDENTS THE CAR WOULD TRY TO TURN
ON BUT WOULDN'T, THE KEYLESS ENTRY WORKED, ALL
LIGHTS WORKS. THE STEERING WHEEL LOCKED ON ALL
INCIDENTS. ALL INCIDENTS THE CAR WAS STATIONARY.
6/5/2020 MY CAR WAS TOWED TO DAVID HOBBS HONDA
AND THEY NOTIFIED ME THE WAS COMPLETELY DEAD
WHEN IT ARRIVED NOTHING WAS WORKING. THEY
CALLED BACK LATER IN THE DAY AFTER DOING TESTING
AND ONCE AGAIN SAID ALL TESTING WAS FINE. HOWEVER,
THEY WOULD LIKE TO KEEP MY VEHICLE OVERNIGHT TO
SEE IF MY CAR WOULD WORK IN THE MORNING AND TO

DO TESTING AGAIN. MY VEHICLE IS STILL AT THE
DEALERSHIP. *TR

**Complaint Date:   May 23,      NHTSA ID Number: 11098225
2018**

CAR NEEDED TO BE JUMPED STARTED TWICE. DEALERSHIP
UNABLE TO FIND CAUSEO OF BATTERY NOT FUNCTIONING.
TOWED TO DEALERSHIP. BATTERY AND ALL OTHER
DIAGNOSTIC TESTS FAILED TO SHOW ANY CAUSE OF DEAD
BATTERY. FIRST TIME, CAR WOULD NOT START AFTER
WAITING 20 MINS. SECOND TIME, CAR IN GARAGE OVER
NIGHT WOULD NOT START.

**Complaint Date: Nov. 2, 2020   NHTSA ID Number: 11374134**

I HAVE CHANGED TWO BATTERIES SINCE I BOUGHT IT
FIRST BATTERY THAT IT CAME WITH COMPLETELY DIED
AND COULDN'T EVEN GET A JUMP. CHANGED IT AND NOW I
HAVE TO KEEP GETTING JUMP EVERYDAY. MY
WINDSHIELD HAS ALSO CRACKED TWICE FROM
PASSENGER SIDE TO DRIVER SIDE. NO PUNCTURE MARK
INDICATING SOMETHING HIT IT.

**Complaint Date: January 19,    NHTSA ID Number: 11179999
2019**

MY HONDA ACCORD 2017 4 CYN ALL OF DASH BOARD
LIGHTS LIT UP, THE STEERING WHEEL PARTIALLY LOCKED
WHILE I WAS DRIVING GOING 55 MPH. I PULLED OVER AND
COULDN'T CUT THE CAR OFF WITH MY START BUTTON.
AFTER ABOUT 5 MINUTES I WAS ABLE TO FINALLY CUT IT
CUT OFF. THEN IT WOULD NOT START AT ALL. THEN AFTER
ANOTHER 5 MINUTES IT STARTED AND I WENT STRAIGHT TO
THE CAR DEALERSHIP JANUARY 2019. ABOUT SEVEN
MONTHS EARLIER, MY CAR WOULD START AT ALL. I WENT
TO THE DEALERSHIP AND THEY COULDN'T FIND ANYTHING
WRONG. THEY TOLD ME ONLY THING IT MIGHT BE WAS THE
BATTERY, I BOUGHT A BATTERY AND MY CAR WAS ONLY 11
MONTHS OLD. RECENTLY, FEBRUARY 2019, NOW MY
BATTERY IS 7 MONTHS OLD, MY CAR WOULDN'T START
AGAIN. THEY CAN'T FIND ANYTHING WRONG WITH MY CAR,
BUT I AM HAVING ISSUES. THERE HAVE BEEN TIMES WHEN I
START MY CAR AND THE DASH LIGHTS DO NOT COME ON

AND I HOLD THE BUTTON ON THE DASH AND THE SYSTEM REBOOT AND THE DASH LIGHT COME ON. MY CAR IS AT THE DEALERSHIP AND NOW IT IS STARTING, BUT THE SAID EVERYTHING IS REGISTERING THAT NOTHING IS WRONG. I HAVE AN HUGE ISSUE BECAUSE I CAN'T BE STRAINED IN THIS COLD WINTER WEATHER AND MY CAR NOT STARTING. THIS IS UNSAFE BECAUSE I WAS IN MOTION LESS THAN A MONTH AGO ON THE HIGHWAY GOING 55 MPH AND MY CAR FROZE IN MOTION. CJB FEBRUARY 2019

**Complaint Date: December 3,   NHTSA ID Number: 11308018 2020**

LAST SERVICE CHECK, APPROX 1 WEEK, SHOWED BATTERY PARTIALLY DISCHARGED (MARKED AS "FAILED" AND "REPLACE" ON THE SERVICE REPORT. NO APPARENT REASON. TODAY, AFTER A RAINY DAY AND NOT USING THE CAR THE DAY BEFORE, FOUND THE CAR LOCKED AS ALWAYS BUT ALL FOUR WINDOWS WERE DOWN. THIS IS THE SECOND OCCURRENCE. THE FIRST TIME WAS 2 MONTHS AGO WHEN A NEIGHBOR CALLED TO TELL ME THE WINDOWS WERE DOWN. THE CAR WAS LOCKED THEN AS WELL, IT WAS ALSO AFTER A RAINY DAY. IN BOTH OCCURRENCES, THERE WAS NO WATER IN THE VEHICLE OR ON THE SEATS.

**Complaint Date: May 31,        NHTSA ID Number: 11372582 2020**

A FEW MONTHS I STARTED HAVE A PROBLEM WITHE THE MY CAR .I LET MY CAR FOR SHORT TIME LIKE LESS THAN ONE HOUR WITH THE EMERGENCY LIGHTS ON ..BUT THE ENGINE WAS OFF (THE CAR WAS STATIONARY). SO WHEN I WAS ABOUT TO LEAVE FROM THE PLACE WHERE I WERE I STAR THE ENGINE AND IT DIDN'T WORK AND ALL THE LIGHT GO ON LIKE CRAZY AND 3 MESSAGE SHOWED ON THE SCREEN.  THAT SAID IT WAS SAFETY TO DRIVE AND THERE'S A PROBLEM WITH THE BREAK SYSTEM PROBLEM , ANTI-BREAK SYSTEM PROBLEM AND TIRE PRESSURE MONITOR SYSTEM. SO I CALLED THE DEALER AND THEY TOLD ME THAT MAYBE IT WAS SOMETHING WRONG WITH THE BATTERY SO THEY TOLD TO TURN OFF AND TURN THE ENGINE ON AGAIN AND THEY TOLD ME THAT HE DRIVES IT

-29-

FOR A CERTAIN TIME AND ALL THE LIGHTS ON THE DASH GO OUT AND SINCE MAYBE IT WAS BECAUSE OF THE HIGH TEMPERATURES WE HAD. BUT IT WAS LIKE THAT I MEAN THE CAR IS STILL RUNNING "GOOD" BUT I'M NOT FELL SAFETY .I ALREADY TOOK THE THE DEALER WHERE I BOUGHT AND FIRST TIME THEY DIDN'T DO ANYTHING BECAUSE ALL THE LIGHT GO OUT SO THEY SAID THEY DIDN'T FOUND ANYTHING SO THE SECOND TIME THE HAPPENED THE SAME THING I RECORDED A VIDEO AND PHOTOS SO I SHOW THEM AN THE WAY THE STAR DOING A FULL CHECK OF EVERYTHING SO THEY DIDN'T FOUND ANY THING AND STILL APPEARS THOSE 3 MESSAGE A WHEN I STAR THE ENGINE NOT ALL THE TIME BUT THEY DIDN'T FIXED ANYTHING AND THEY DON'T WANT TO CHANGE FOR R ANOTHER CAR ..I DONT KNOW WHAT TO DO

**Complaint Date: July 16, 2020**                    **NHTSA ID Number: 11339802**

CAR WOULD NOT START BACK UP. I HAD PARKED AND WHEN I GOT BACK IN THE CAR IT WOULD NOT START.

**Complaint Date: June 1, 2020   NHTSA ID Number: 11329911**

AFTER OWNING THE CAR FOR 2.5 YEARS, THE CAR WOULD NOT START AND REQUIRED A JUMP. AFTER SEVERAL INSTANCES OF THIS OCCURRING, THE ORIGINAL OEM BATTERY WAS REPLACED. WITHIN 2 MONTHS OF INSTALLING THE NEW BATTERY, THE CAR WOULDN'T START AND REQUIRED A JUMP. THE CAR WILL START FINE FOR A FEW WEEKS AND THEN REQUIRES ANOTHER JUMP (THIS REPEATS EVERY SEVERAL WEEKS). THE CAR HAS BEEN INSPECTED BY A HONDA DEALERSHIP AND THEY FOUND NO CHARGING OR DRAW ISSUES. THE CAR IS DRIVEN ENOUGH, ACCORDING TO THE DEALER, SO THAT'S NOT AN ISSUE EITHER. IT APPEARS BASED ON OTHER COMPLAINTS TO NHTSA THAT THIS ISSUE IS HAPPENING TO OTHER 2017-2018 HONDA ACCORD OWNERS. PLEASE INVESTIGATE THIS ISSUE WITH HONDA AND HAVE THEM PERFORM A RECALL IF NECESSARY.

**Complaint Date: April 21, 2020**                    **NHTSA ID Number: 11321903**

VEHICLE FAILED TO START IN GARAGE FOR FIRST TIME
AFTER HAVING BEEN DRIVEN REGULARLY. BATTERY TOO
WEAK TO TURN ENGINE OVER. ATTEMPTED TO RECHARGE
BATTERY. IT WOULD NOT TAKE A CHARGE. CHECKED
BATTERY FLUID LEVEL AND IT WAS BELOW TOP OF PLATES
IN THREE OUTER CELLS. ADDED DISTILLED WATER AND
ATTEMPTED TO CHARGE AGAIN. IT WOULD STILL NOT TAKE
A CHARGE. CALLED DEALER AND REPORTED. 2017 ACCORD
WAS 38 MONTHS SINCE PURCHASE WITH 28,000 MILES ON IT.
NO WARRANTY COVERAGE THEREFORE I PURCHASED A
NEW BATTERY AT FARM & FLEET. TECHNICIAN THERE
NOTED BATTERY CASE DISTORTION AS IF THE BATTERY
HAD BEEN FROZEN. DEFINITELY DID NOT HAPPEN SINCE WE
HAD THE VEHICLE SINCE THE BATTERY HAD NEVER
PREVIOUSLY BEEN DISCHARGED TO MAKE IT VULNERABLE
TO FREEZING. DEFINITELY A PROBLEM OTHER THAN
ROUTINE BATTERY FAILURE DUE TO AGE OR USE.

**Complaint Date: February 3,     NHTSA ID Number: 11308018
2020**

THERE ARE TIMES THE CAR WILL NOT START. HAVE TO
GET A JUMP TO START

**Complaint Date: October 21,     NHTSA ID Number: 11270090
2019**

THIS MORNING ON MY WAY TO WORK I STOPPED FOR GAS,
TURNED OFF MY CAR, WENT TO RESTART WHEN MY DASH
STARTED GOING CRAZY AND FLICKING ON AND OFF. IT
WOULDN'T START AGAIN SO MY HUSBAND HAD TO LEAVE
WORK AND COME JUMP ME, WE DROVE IT HOME, IT SAT
FOR 3 MINS THEN TRIED TO START IT AGAIN WHEN THE
SAME THING HAPPENED. WE DECIDED TO LET THE CAR
STAY PLUGGED INTO A TRICKLE BATTERY CHARGER ALL
DAY WHILE I WENT TO WORK. AFTER WE GOT HOME, WE
DECIDED TO TEST IT, AND IT STARTED RIGHT UP. WE WERE
ABLE TO TURN IT ON AND OFF SEVERAL TIMES WITHOUT
HESITATION ALL UNTIL WE LET 5 MINS PASS IN BETWEEN
STARTS WHEN THE FLICKERING OF THE DARK BEGAN
AGAIN AND THE CAR REFUSED TO START. MY CAR HAS
LESS THAN 50K MILES ON IT, THIS ISSUE NEEDS TO BE
ADDRESSED WHEN SO MANY USERS ARE HAVING THE

SAME PROBLEM. WHEN WE GOT HOME WE CHECKED THE
BATTERY AND IT WAS READING 12VOLTZ. WE HAVE
FOUND MULTIPLE COMPLAINTS ABOUT THE SAME ISSUE
FROM SEVERAL OTHER OWNERS AND WOULD LIKE TO
KNOW WHAT IS BEING DONE TO RESOLVE THE ISSUE.
SOURCES: CARCOMPLAINTS.COM, HONDAPROBLEMS.COM,
HTTPS://WWW.NHTSA.GOV

**Complaint Date: October 4,       NHTSA ID Number: 11266417
2019**

LAST NIGHT I HAD JUST GOTTEN HOME FROM WORKED
AND GONE IN THE HOUSE TO CHANGE FOR CHURCH. LESS
THAN 5 MINUTES LATER, I RETURNED TO MY CAR AND
WHEN TRYING TO START IT, IT WOULD START UP. LIGHTS
FLICKERED ON DASH, BUT IT WOULDN'T TURN OVER. HAD
ROADSIDE ASSISTANCE COME TO JUMP START CAR. LESS
THAN 24 HOURS LATER, THE SAME THING HAPPENED. CAR
WON'T START AFTER DRIVING THIS MORNING AND THIS
AFTERNOON ALREADY. THIS IS THE THIRD TIME HIS
HAPPENED THIS YEAR, WITH IN A FEW MONTHS. CAR HAS
LESS THAT 50K MILES. THIS NEEDS TO BE LOOKED INTO
BECAUSE IF I'M IN THE MIDDLE OF NOWHERE, THIS COULD
BE VERY DANGEROUS.

**Complaint Date: July 24,         NHTSA ID Number: 11258265
2019**

REPLACED THE FACTORY BATTERY IN 8/19 AND THEN
AGAIN 9/24/19.

THERE WAS NOTHING LEFT ON IN THE CAR THAT WOULD
HAVE CAUSED THE BATTERY TO DIE AND ALTERNATOR IS
CHARGING CORRECTLY PER TECHNICIAN.

IS THERE A KNOWN ISSUED WITH THE ELECTRICAL
SYSTEM?

**Complaint Date: July 24,         NHTSA ID Number: 11240417
2019**

SINCE I BOUGHT MY 2017 ACCORD MANY TIMES AFTER
DRIVING THE CAR AND TURNING OFF THE ENGINE I TRIED
TO START IT DIDN'T I HAD TO HAVE IT A BOOST THEN IT

RUNS FINE WITH SOME DASH LIGHTS ON THEN THEY
DISAPPEAR ONCE I DRIVE AFTER MANY TIMES I TOOK IT
TO THE DEALER THEY SAID YOUR BATTERY IS GOOD AND
NO ELECTRICAL PROBLEM AND THEN I READ ONLINE I
SAW TONS OF PEOPLE TALKING ABOUT THE SAME ISSUE
AND THEY HAD TO REPLACE HONDA BATTERY TO A
BIGGER BATTERY WITH HIGHER CCA BECAUSE THIS
BATTERY IS WEAK AND IT CAUSE A STALL
CONSEQUENTLY A CRASH OR THE CAR WILL NOT START IF
YOU ARE IN THE MIDDLE OF NOWHERE IT'S CLEAR THIS IS
A HONDA PROBLEM THAT I'LL HAVE TO BUY A BIGGER
BATTERY WITH HIGHER CCA AND CAPACITY TO AVOID AS
THEY SAID(NOT HONDA) THIS PROBLEM TO HAPPEN AGAIN

THANK YOU VERY MUCH

THIS CAR IS 28 DAYS OLD

**Complaint Date: June 23, 2019**          **NHTSA ID Number: 11221967**

RECENTLY TOOK MY CAR IN FOR CAR DOC MAINTENANCE
FOR AND AN OIL CHANGE. PAPERWORK STATES THE
BATTERY IS GOOD. UPON LEAVING THE DEALERSHIP AFTER
MECHANIC BROUGHT MY VEHICLE OUT TO ME I JUMPED
TRIED TO START THE VEHICLE AND IT WOULDN'T START SO
I INFORMED THE HONDA MECHANIC AND THEY GAVE ME A
JUMP WITH THE JUMPER BOX. IT'S BEEN 1 MONTH SINCE
THEN AND MY CAR WON'T START AT THE ODDEST TIMES
EVEN AFTER I'VE BEEN DRIVING FOR A WHILE. CAR WON'T
START OR TURN OVER AND THE LIGHTS JUST FLICKER ON
AND OFF. I'M CURRENTLY WAITING ON A TOW TRUCK TO
GET A JUMP MY CAR IS PARKED IN THE GARAGE AND IT
WON'T START. VERY FRUSTRATED WITH HONDA I HAD THE
CAR LESS THAN 2 YEARS AND I HAVE LESS THAN 50K MILES

**Complaint Date: May 11, 2019**          **NHTSA ID Number: 11207244**

CAR WON'T TURN OVER AT RANDOM TIMES. CLEANED
TERMINALS AND TESTED BATTERY AND ALTERNATOR
WHICH ARE GOOD.

1

2  **Complaint Date: April 19,       NHTSA ID Number: 11202602**
    **2019**

3

4  BATTERY DIED AFTER LESS THAN 2 YRS OF USE. BATTERY
    DIES ABOUT ONCE A WEEK

5

6  WHAT CAN I DO, VERY DANGEROUS IF HAPPEN TO ME IN
    THE MIDDLE OF THE NIGH.

7

8  **Complaint Date: October 10,     NHTSA ID Number: 11180194**
    **2018**

9  BATTERY DIED AFTER LESS THAN 2 YEARS OF USE.
    NEEDED TO REPLACE. NO ELECTRICAL USE OF THE

10  VEHICLE, PEP BOYS SAYS ITS A COMMON ISSUE WITH NEW
    HONDAS. NEEDED TO TOW CAR AND DANGEROUSLY

11  TURNED OFF IN THE MIDDLE OF THE STREET WHEN THE

12  BATTERY DIED.

13

14  **Complaint Date: February 2,     NHTSA ID Number: 11174885**
    **2019**

15  OVER THE LAST SEVERAL DAYS THE CAR WOULD NOT
    START WITHOUT REQUIRING A JUMP FOR THE BATTERY.

16  THEN IT WOULD RUN, BUT ONCE THE CAR WAS OFF AND
    HAD TO BE RESTARTED IT WOULD REQUIRE ANOTHER

17  JUMP. HAD THE BATTERY TESTED AND BROUGHT THE CAR

18  TO DEALERSHIP AND THEY STATE NOTHING IS WRONG

19  WITH THE VEHICLE. (IT STARTED THERE NO PROBLEM). IT
    RAN FINE FOR THE NEXT FEW DAYS, BUT CURRENTLY ITS

20  PARKED AND WON'T START. THE ONLY LIGHTS THAT

21  DISPLAYED WAS THE EPS WHICH TURNED OFF SHORTLY
    AFTER THE CAR STARTED.

22

23  **Complaint Date: June 1, 2017   NHTSA ID Number: 11004676**

    I PURCHASED A NEW VEHICLE THRU A HONDA
24  DEALERSHIP, WHICH IS 4 HOUR DRIVE FROM MY

25  RESIDENCE. I'VE HAD TO GET VEHICLE JUMPSTARTED ON 4
    OCCASIONS AND HAVE TAKEN VEHICLE TO A LOCAL

26  HONDA DEALERSHIP TO GET IT INSPECTED UNDER

27  WARRANTY TERMS. THE DEALERSHIP HAS ONLY
    REPLACED BATTERY TWICE YET HAS NOT BEEN ABLE TO

28

-34-

PINPOINT PROBLEM. DRIVER SIDE DOOR LOCK/UNLOCK
BUTTON ALSO HAS BEEN MALFUNCTIONING AND
TEMPERATURE GAUGE HAS ALSO BEEN
MALFUNCTIONING. I HAVE BEEN WORKING WITH HONDA
FINANCE CORPORATION CASE MANAGER BY THE NAME OF
KIA WHO HAS BEEN GIVING ME RUNAROUND ALONG WITH
LOCAL DEALERSHIP, UNABLE TO SOLVE VEHICLE
DEFECT/SAFETY ISSUE. THEY NOW SUGGEST I TAKE
VEHICLE TO ORIGINAL HONDA DEALER OF PURCHASE
WHICH IS A 4 HOUR DRIVE AND HAVE THEM REMOVE
AFTER MARKET ALARM THEY INSTALLED WHICH MIGHT
SUPPOSEDLY BE CAUSING ELECTRICAL PROBLEM.
HOWEVER, IT IS SPECULATION AND DRIVING LONG
DISTANCE IS A HARDSHIP FOR ME AND VERY UNFAIR. I
FEEL LIKE LOCAL HONDA DEALER SHOULD FIX PROBLEM.
THIS IS A HUGE CAR SAFEY ISSUE THAT HAS NOT BEEN
RESOLVED. YOUR ASSISTANCE AND GUIDANCE IS VERY
APPRECIATED.

**Complaint Date: Sept. 25, 2020**          **NHTSA ID Number: 11361076**

WHEN I WENT TO START MY CAR AFTER PARKING IT IN A
PARKING LOT, MY CAR WOULDN'T START. THE CONTROL
PANEL WAS FLASHING ON AND OFF AND STATED THAT
THERE WAS AN ISSUE WITH THE BRAKE SYSTEM AND TO
SEE MY DEALER. I HAD THE CAR TOLLED TO HONDA.
AFTER INSPECTING THE CAR, THEY TOLD ME THERE WAS
A DEFECTIVE CELL IN THE BATTERY AND THEY
REPLACED THE BATTERY. I PURCHASED MY CAR BRAND
NEW LAST YEAR IN 2019 YET THIS DEFECTIVE BATTERY
CAUSED ME TO BE STRANDED, WHICH I DON'T EXPECT TO
HAPPEN WITH AN ESSENTIALLY NEW CAR.

COMPLAINT

58.    Owners also complained about the Accord battery on many other sites, including popular social media sites and Honda forums, which Defendants monitor:[8]

- Started happening a couple weeks ago, but 4 times it has done this. Car randomly will not start when you hit the start button. It clicks as if the battery were dead and when you jump it, it starts up. If you turn the car off after jumping and then hit the start button again, it starts on it's own. Honda checked them system and everything tested in the green zone "good". Well, it just did it again today after getting gas and blocked the Costco gas station. After getting a jump, I parked and turned it off. Pushed the button and it started with no issue! Car has 25,000 miles and I live in Texas. The weather is still pretty nice, in the 60-70s midday.[9]

- Honda has the shittiest batteries I ever seen in my life. Mine crapped out on me one week after delivery.[10]

- Wow lol. Yeah as I've been reading through the forums that's what I've been seeing alot. Underpowered batteries.[11]

- Mine [2018 Accord] is only 3k miles, 7 months old. It's really frustrated me. 3 weeks ago, for the first time I went to dinner and came back 1 hour later just to see the batter was completely dead. All alert *ABS, brake, light on screen came up. Have to call RSA for jump start. 2nd time, same thing happen overnight. Battery drains for no reason. Came to maintenance, dealer said everything is fine. 3rd time, same thing all over again. I don't know what to do. Will go back to dealer to force them at least replace my battery.[12]

---

[8] A ServiceNews Article from July 2019 warned dealerships and authorized Honda mechanics about a "video going around on YouTube and online forums that claims to fix an issue," indicating Defendants monitor these sites. https://static.nhtsa.gov/odi/tsbs/2019/MC-10163187-0001.pdf.
[9] https://www.reddit.com/r/accord/comments/dnwrjr/2017_accord_randomly_wont_turn_over_battery/
[10] Id.
[11] Id.
[12] https://honda-tech.com/forums/honda-accord-2018-current-173/honda-accord-2018-battery-problem-3334336/

-36-

My 2017 honda accord was working fine 2 hours ago but now it won't start. When I press the start button the lights on the dashboard flicker and there is a fast but not that loud clicking noise. The electronics in the car seem to work fine. I can take a video if it would be helpful. Any advice would be greatly appreciated. My college graduation is tomorrow afternoon and I have lots of things to do tomorrow morning that require a car.[13]

- Your battery is shot. It may have enough juice to run interior electronics but it takes a lot more voltage than that to crank the starter over. I'm a Honda Technician. I see this sort of thing on an almost daily basis. Since it's a 2017 I'm assuming it's still running the factory battery. The factory batteries in Hondas are garbage. I've seen them dead at 10K miles.[14]

- Reading online. And I guess like I said it's pretty common. People were saying they have the same problems. Battery will be  good for a while and then all of a sudden it won't start. So I get to looking. These Hondas have a battery about this big. No joke the battery's this big. Looks almost a little bit bigger than a lawn mower battery probably.[15]

- I drive a 2017 Accord sport, have had this lease for about a year and a half, have had to get a jumpstart twice this week. Very disappointed to have this issue in a new car with 20k miles. [16]

- That's a legit problem, the battery died less than 2 years after I bought my 17 Honda Accord, Costco saved the day.[17]

- Even (sic) 2017 has the same issues replaced by the dealer twice same old 💩. Honda Products are not what they used to be.[18]

---

[13]https://www.reddit.com/r/MechanicAdvice/comments/bpjy2j/2017_honda_accord_wont_start_details_in/
[14] *Id.*
[15] https://www.youtube.com/watch?v=TtM4QWiCJ2w
[16] https://www.youtube.com/watch?v=nlZMp7yW_ZY
[17] *Id.*
[18] *Id.*

- 2017 Honda Accord Touring V6, owned it for 7 months and had to replace the battery.[19]

- Hey DIY Bri, when you say the AC relay could fail and your AC isn't working, what do you mean by that? Would it not work at all? Would no cold air come out, no compressor sound? My mom's 2017 Accord Touring has recently been having battery problems. The dealer tested the obvious like the alternator, battery cells, etc and nothing was wrong. But it's constantly dying at random. Sometimes it doesn't even have any crank amps and is dead as can be. Your solution seems very plausible. Being in engineering, I joked with my mom that they weren't thinking outside of the box hard enough, and only looking at the obvious. Little did I know the fuse box may the the issue![20]

59.     In addition to being aware of the Defect through complaints posted on various Honda forums, popular social media sites, and NHTSA, Honda directly learned of the Defect from its networks of dealerships through communications, repairs, and orders for new batteries. Moreover, Honda's Quality Center "gathers quality-related data from dealers in Japan and overseas through service departments and customer consultation centers."[21] Indeed, their battery collection program confirms both Defendants and their authorized dealerships were aware of the Defect.

60.     Despite its knowledge of the Battery Defect, Honda failed to disclose it to Plaintiffs and members of the Class.

---

[19] *Id.*
[20] https://www.youtube.com/watch?v=vc2FiELAbZo
[21] https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf

61.     A similar pattern emerges with respect to the Honda CR-V:

Beginning in 2018, Honda sent manufacturing communications requesting

batteries from first the 2017-2018 CR-V.[22] Despite this battery collection

program, NHTSA reported a substantial number of battery-related grievances for

2017-2019 CR-Vs. These types of complaints are replicated across other social

media sites and Honda forums. Below is a sampling of complaints from 2017-

2019 CR-Vs.

| Complaint Date: February 3, 2020 | NHTSA ID Number: 11308018 |
| --- | --- |

TL* THE CONTACT OWNS A 2019 HONDA CR-V. THE
CONTACT STATED THAT THE VEHICLE FAILED TO START
WITHOUT WARNING. THE VEHICLE WAS TOWED TO THOMAS
TEAM HONDA (814-262-2140, LOCATED AT 1920 BEDFORD ST,
JOHNSTOWN, PA 15904) WHERE THE TECHNICIAN STATED
THAT THE VEHICLE NEEDED TO BE DRIVEN EVERYDAY TO
KEEP THE BATTERY CHARGED. THE TECHNICIAN ALSO
STATED THAT THE CONTACT MAY NEED TO GET A BATTERY
TENDER. THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE AND INFORMED THE CONTACT THAT A CASE
WORKER WOULD BE ASSIGNED. THE CONTACT DID NOT
HEAR FROM A CASE WORKER. THE VEHICLE WAS NOT
REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY
400.

| Complaint Date: March 15, 2019 | NHTSA ID Number: 11187238 |
| --- | --- |

CONTINUAL BATTERY FAILURES, BATTERIES GO DEAD IF
NOT DRIVEN EVERY DAY. ON MY SECOND BATTERY AND

---

[22] Honda issued two Manufacturer Communications for the CR-V related to the batteries, one in 2017 and one 2019. However, as the complaints show, owners and lessees have continued to report battery failures on the 2017 years after the initial communication was issued and a similar pattern is playing out with the 2019 CR-Vs. Additionally, some consumers report that the software updates fail to fix the issue.

DIED AS TWO DAYS NOT BEING DRIVEN. SOME SORT OF PARASITIC DRAIN?

**Complaint Date: August 19, 2019**      **NHTSA ID Number: 11244857**

BATTERY IS DRAINING OUT AFTER SITTING FOR 3 DAYS IN A PARKING LOT, AND WILL NOT START UP AGAIN WITHOUT A JUMP. BATTERY TESTS ARE COMING BACK AS FINE.

**Complaint Date: January 6, 2019**      **NHTSA ID Number: 11192285**

VEHICLE BATTERY WAS DEAD AFTER THE SUV SAT UNUSED FOR 2 DAYS WITHIN 3 WEEKS AND 300 MILES OF OWNERSHIP. THIS HAS OCCURRED OVER 6 TIMES IN 3000 MILES. BATTERY HAS BEEN REPLACED BY THE BATTERY TWICE AND IS NOW ON ITS THIRD BATTERY. DEALER NOTES THIS PROBLEM EXISTS ON ALL 2019 CRV'S DELIVERED TO-DATE AND THAT THEY DO NOT YET HAVE A SOLUTION.

**Complaint Date: May 18, 2020**      **NHTSA ID Number: 11326577**

CAR BATTERY WILL DIE IF THE CAR IS NOT USED FOR MORE THAN A COUPLE DAYS. WE HAVE TAKEN IT INTO THE DEALERSHIP TO GET CHECKED MANY TIMES ONLY TO BE TOLD NOTHING IS WRONG. BATTERY HAS BEEN REPLACED MULTIPLE TIMES AS WELL ONLY FOR THE CAR TO DIE A FEW DAYS LATER. WE PURCHASED THE CAR BRAND NEW IN MARCH 2017. THE FIRST TIME IT HAPPENED IT

WAS ONLY A FEW MONTHS INTO OWNING THE CAR. *TR

**Complaint Date: February 3, 2020**      **NHTSA ID Number: 11308018**

BATTERY KEEPS DYING AFTER 2 DAYS OF NON OPERATIONAL.THIS HAS HAPPEN MULTIPLE TIMES AND NO FIX FROM DEALER. *TR

**Complaint Date: May 18, 2020**      **NHTSA ID Number: 11325093**

MY WIFE AND I HAVE, ON NUMEROUS INCIDENTS, HAD TO JUMPSTART THE CR-V DUE TO A DEAD BATTERY.

I HAVE JUMPSTARTED THE VEHICLE THE NIGHT BEFORE (MAY 17TH) TO WAKE UP TO A BATTERY WITH A 5 VOLT CHARGE (MAY 18TH). AFTER I JUMPED THE CAR ON THE 17TH, I ATTACHED MY VOLTMETER TO THE BATTERY AND WITNESSED A DISCHARGE OF 0.01 VOLTS EVERY 2 TO 3 SECONDS. IN 20 SECONDS, THE BATTERY DRAINED FROM 12.56V TO 12.39V.

I HAVE PREVIOUSLY TAKEN THE CAR TO O'REILLY'S AUTO PART STORE TWICE TO TEST THE BATTERY AND ALTERNATOR. BOTH PASSED. YESTERDAY, MAY 18TH, I HOOKED UP A SCANNER AND FOUND NO FAULTY CODES IN THE VEHICLE. THERE IS AN OBVIOUS PARASITIC DRAIN ON THE BATTERY WITH NO SOLUTION. I'VE ALSO REVIEWED MANY COMPLAINTS REGARDING DEAD BATTERIES ON THE 2017 HONDA CR-V WITH NO REAL CAUSE.

I WILL TAKE THE VEHICLE INTO HONDA THIS WEEK TO SEE IF THE SITUATION CAN BE FIXED, BUT THIS VEHICLE APPEARS TO BE A LEMON. *TR

**Complaint Date: May 13, 2020**          **NHTSA ID Number: 11324710**

AS OF MAY 13, I HAVE HAD TO RETURN MY LEASED 2017 CR-V TO THE DEALERSHIP FOUR (4) TIMES FOR THE SAME REASON - THE BATTERY WOULD NOT WORK , HENCE THE ENGINE DID NOT START. THESE BREAKDOWNS OCCURRED AT : 9573 MILES, 9993 MILES, 17315 MILES AND MOST RECENTLY 21,703 MILES. EACH EVENT OCCURRED WHILE THE AUTO WAS TURNED OFF. THIS HAS COST UNDUE HARDSHIP. WITH THE MOST RECENT EVENT, I WAS VERBALLY TOLD THE PROBLEM IS MY FAULT - SINCE I DO NOT DRIVE THE VEHICLE ENOUGH !!! I SHOULD INVEST IN SOMETHING CALLED A " TRICKLE CHARGER " AND PLUG THE VEHICLE IN DURING THE EVENING HOURS !!! QUITE INCREDIBLE! I MORE THEN ONCE LOUDLY VOICED MY CONCERNS. THE BASIC ATTITUDE HAS BEEN " YOU'RE ON YOUR OWN BUDDY "!!! HOPEFULLY, THE DEALERSHIP WILL

BE CAUTIONED TO AVOID FALSEHOODS AND TO LEVEL
WITH ITS CUSTOMER. MY WIFE AND I ARE BOTH SENIOR
CITIZENS . WE ARE ATTEMPTING TO NAVIGATE THE VIRUS
EPIDEMIC AS BEST WE CAN! WE HAD TO DRIVE ANOTHER
VEHICLE TO THE DEALERSHIP TO PICK UP OUR " TAINTED "
LEASED PRODUCT WITHOUT SO MUCH AS AN APOLOGY.
QUITE INCREDIBLE ! MY COMPUTER IS QUITE ELDERLY -
HENCE I CANNOT FORWARD DOCUMENTATION BUT I CAN
CERTAINLY MAIL SUCH. PLEASE FEEL FREE TO CONTACT
ME FOR MUCH MORE INFORMATION CONCERNING THIS
FAULTY PRODUCT. *TR

**Complaint Date: July 5, 2019    NHTSA ID Number: 11229585**

IF I PARKED THIS CAR OVER TWO NIGHTS, ITS BATTERY
WILL DIE AND NEED TO CALL AAA TO JUMP IT. IT OCCURS
OVER FIVE TIMES IN ONLY TWO YEARS. THEN I CHANGED
MY BATTERY, IT STILL HAPPENED AND I ALSO TURN OFF
ALL LIGHT IN MY CARS.

**Complaint Date: May 24,        NHTSA ID Number: 11209788
2019**

USING THE ELECTRONIC EMERGENCY BRAKE DRAINS THE
BATTERY TO DEAD. THIS HAPPENED WITHIN TWO MONTHS
OF NEW AND I HAVE STOPPED USING IT. NOW THE
INFOTAINMENT SCREEN IS NOT WORKING CORRECTLY FOR
THE RADIO. PARTIAL DISPLAY WITH SOUND AND WITHOUT
SOUND AFTER NUMEROUS REBOOTS.

**Complaint Date: January 10,    NHTSA ID Number: 11203468
2019**

BATTERY FAILED TO START (AT ALL) ON 01/09/19, AND WAS
DIFFICULT TO JUMP START. VEHICLE (AND THE OEM
BATTERY) HAD 13,167 MILES AT TIME OF FAILURE, AND HAD
BEEN IN SERVICE APPR.17 MONTHS. NO EVIDENCE OF
ABUSE. HONDA REFUSED TO REIMBURSE FOR DIAGNOSIS &
REPAIR AT INDEPENDENT SHOP.

**Complaint Date: Feb. 17,        NHTSA ID Number: 11194855
2019**

-42-

1
2
3
4
5

IF I STOP USING THE CR-V FOR TWO DAYS THE BATTERY GOES DEAD AND I HAVE TO RECHARGE IT. THE ORIGINAL BATTERY WAS REPLACED AFTER THE FIRST YEAR IN THE HONDA DEALER. IF I WANT TO USED THE OTHER CAR I NEED TO TURN ON THE CR-V EVERY DAY SO THE BATTERY DOES NOT LOOSE CHARGE.

6
7

**Complaint Date: March 21, 2019        NHTSA ID Number: 11191314**

8
9
10
11
12

VEHICLE IS UNABLE TO START AFTER SHUTDOWN WITH NO DIAGNOSED CAUSE. AFTER SUCCESSFUL SHUTDOWN (PARKED), VEHICLE WILL BE UNABLE TO BATTERY START, WITH LIGHTS AND DASHBOARD ELECTRONICS FLASHING AND STARTER UNABLE TO ENGAGE WHEN PRESSING START BUTTON WITH BRAKE PEDAL DEPRESSED. VEHICLE REQUIRES JUMP START FOR SUCCESSFUL START UPON SYMPTOMS APPEARING.

13
14
15
16
17
18
19
20

VEHICLE HAS BEEN BROUGHT TO HONDA DEALERSHIPS SEVERAL TIMES FOR DIAGNOSIS AND SERVICE, BUT NO IDENTIFIABLE CAUSE HAS BEEN FOUND. UPON LATEST VISIT, CAR WAS UNABLE TO START IMMEDIATELY AFTER PARKING CAR AT DEALERSHIP. DEALERSHIP DIAGNOSED BATTERY (NORMAL, GR8, ED-18 TESTS) AND BOTH TESTS PASSED WITH NORMAL PARAMETERS. DEALERSHIP PERFORMED PARASITIC DRAW TEST WITH NO ABNORMAL DRAW FOUND. DEALERSHIP APPLIED HONDA TECHNICAL SERVICE BULLETIN (TSB) 17-032 AND DID NOT FIX PROBLEM.

21
22
23
24
25
26
27
28

THIS PROBLEM OCCURS SEEMINGLY AT RANDOM INTERVALS AND WITH NO PATTERN TO WHAT COULD CAUSE THE BATTERY TO BE UNABLE TO START THE CAR. PROBLEM APPEARS AFTER PARKING WITH OR WITHOUT PARKING BRAKE ENGAGED PRIOR TO SHUTDOWN, AFTER NO DRIVING ACTIVITY FOR SEVERAL WEEKS, AND ALSO AFTER DRIVING FOR SEVERAL HOURS PRIOR TO SHUTDOWN. NO ACCESSORIES OR LIGHTS ARE LEFT ON OR PLUGGED IN TO THE CAR'S ELECTRICAL SYSTEM DURING PERIODS OF NO DRIVING ACTIVITY.

| **Complaint Date: June 11, 2017** | **NHTSA ID Number: 11165157** |
|---|---|
| VEHICLE FREQUENTLY RUNS OUT OF BATTERY AND NEED TO JUMP START. | |

| **Complaint Date: October 25, 2018** | **NHTSA ID Number: 11142765** |
|---|---|
| PARASITIC BATTERY DRAIN, VEHICLE BATTERY DRAINS AFTER 2 DAYS OF NON USE | |

| **Complaint Date: Sept. 25, 2018** | **NHTSA ID Number: 11131864** |
|---|---|
| FOR THE SECOND TIME, AFTER LEAVING THE VEHICLE PARKED FOR 3-5 DAYS THE BATTERY HAS BEEN DRAINED AND UNABLE TO START THE ENGINE. | |

| **Complaint Date: August 15, 2017** | **NHTSA ID Number: 11120233** |
|---|---|
| BOUGHT THE CAR APRIL OF 2017, AFTER A FEW MONTHS CAR WENT DEAD JUMP START IT AND TOOK IT TO THE DEALER FOR DIAGNOSTIC. DEALER REPLACES THE BATTERY, NOT MUCH EXPLANATION WHY. THE PROBLEM HAPPEN 2 MORE TIMES, HAD TO JUMP START CAR AGAIN TOOK IT BACK TO THE DEALER BUT THIS TIME DEALER TELLING ME THAT THE CAR NEEDS TO BE DRIVEN REGULARLY AND ALSO ON A CERTAIN DISTANCE SO THAT BATTERY WILL BE CHARGED UP COMPLETELY. AND WAS TOLD TO BUY A PORTABLE CHARGER, THE PROBLEM IS I BOUGHT THIS CAR SUPPOSEDLY FOR WEEKEND USE ONLY, NOW I AM REQUIRED TO DRIVE IT AROUND JUST TO CHARGE THE BATTERY. | |

| **Complaint Date: April 23, 2018** | **NHTSA ID Number: 11090045** |
|---|---|
| FIVE TIMES THE BATTERY DRAINED COMPLETELY WITH NOTHING ON, AFTER SITTING UNUSED, GARAGED, OVER NIGHT OR AFTER ONE DAY UNUSED. AFTER THE SECOND INCIDENT THE DEALER REPLACED THE BATTERY. AFTER THE FOURTH INCIDENT, THE DEALER CHARGED THE | |

BATTERY. AFTER THE FIFTH INCIDENT, ONE WEEK LATER, THE DEALER CHARGED THE BATTERY AND CLAIMED ONLY A .002 MILIAMP DRAW.

**Complaint Date: Feb. 16, 2018**      **NHTSA ID Number: 11073304**

CAR PURCHASED JULY 1, 2017. JAN 6, 2018 BATTERY DIED AFTER SITTING FOR ROUGHLY 2 DAYS. HONDA CHECKED BATTERY AND FOUND NO PROBLEMS WITH BATTERY OR ELECTRICAL SYSTEM. FRIDAY, FEB 16, 2018 SAME PROBLEM: DEAD BATTERY. CAR WAS SITTING FOR 3 DAYS PRIOR TO DISCOVERY. THERE ARE NO SUPPLEMENTAL ELECTRICAL ACCESSORIES.

**Complaint Date: October 10, 2017**      **NHTSA ID Number: 11032872**

BATTERY DRAINS COMPLETELY FOR NO REASON WHEN VEHICLE IS PARKED. THE FIRST TIME IT HAPPENED THE DEALERSHIP REPLACED THE BATTERY. IT HAS HAPPENNED TWICE SINCE THEN AND DEALERSHIP DOES NOT PROVIDE A FIX.

**Complaint Date: February 7, 2020**      **NHTSA ID Number: 11308113**

VEHICLE BATTERY WILL DIE AFTER TWO DAYS OF NON STARTING. THIS HAPPENS CONSTANTLY.

**Complaint Date: November 17, 2019**      **NHTSA ID Number: 11280821**

DEAD BATTERY - 11-17-2019, 11-18-2019 (2YRS 3MONTHS OLD, 16,000 MILES) GARAGE KEPT. CAR WON'T START. CAR PARKED IN GARAGE.
OF NOWHERE, THIS COULD BE VERY DANGEROUS.

**Complaint Date: Jan. 31, 2018**      **NHTSA ID Number: 11076480**

WHILE ON VACATION, I HAD MY 2018 HONDA, CRV-EXL PARKED FOR NEARLY 2 WEEKS. ON OUR RETURN, I ATTEMPTED TO START THE VEHICLE. IT WOULD NOT START AS THE NEW BATTERY WAS COMPLETELY

-45-

DRAINED AND DEAD. LUCKILY I HAD A CHARGER AND CHARGED THE VEHICLE FOR 2 HOURS. I WAS THEN ABLE TO START THE VEHICLE AND IDLE IT. DURING IDLE THE DISPLAY INDICATED PROBLEMS IN ALL OPERABLE FUNCTIONS. DURING A 45 MIN DRIVE THE SYSTEM MUST HAVE RESET ITSELF AND THE VEHICLE OPERATED NORMALLY, THIS CONDITION REPEATED ITSELF ABOUT 1 MONTH LATER WITH THE SAME PROBLEMS. I AM SCHEDULE TO HAVE AN ELECTRICAL SYSTEM CHECK OF THE CRV SOON AT THE DEALERSHIP WHERE THE VEHICLE WAS PURCHASED. I HOPE THEY DISCIVER THE SOURCE OF THE PROBLEM.

**Complaint Date: July 29, 2020**        **NHTSA ID Number: 11342119**

I BOUGHT THE VEHICLE IN DECEMBER 2018. ABOUT 6 MONTH AGO, THE BATTERY WAS BAD AND REPLACED BY THE CAR DEALER. ABOUT 3 WEEKS AGO, THE AIR CONDITIONING SYSTEM WAS NOT FUNCTIONING. THE DEALER STATED IT WAS DUE TO DEFECTIVE RETURN HOSE. THE CAR STAY AT DEALER FOR 7 DAYS IN ORDER TO GET THE NEW PART IN. HONDA REFUSED TO PAY FOR A RENTAL CAR AS IT WAS TOO HOT TO DRIVE. I BELIEVE I BOUGHT A DEFECTIVE CAR.

**Complaint Date:  July 29, 2020**        **NHTSA ID Number: 11342279**

I PARKED MY CAR IN MY GARAGE WITH HALF A TANK OF GAS ON SUNDAY. ON WEDNESDAY I WENT TO START MY CAR TO NO AVAIL. I CALLED ROADSIDE ASSISTANCE TO JUMP START MY VEHICLE. THIS WORKED, HOWEVER MY GAS WAS NOW ON EMPTY. THE VEHICLE HAD BEEN LOCKED, NO LIGHTS ON IN AN ENCLOSED GARAGE FOR 3 DAYS. I HAVE ONLY USED IT FOR SHORT DRIVES SINCE MARCH DUE TO COVID-19.

**Complaint Date: Dec. 21, 2018**        **NHTSA ID Number: 11164461**

ON 12/21/18, I WENT TO START THE VEHICLE AND IT STARTED FLASHING ALL KINDS OF ALERTS ON THE

DASHBOARD. THE CAR WOULD NOT START. DOOR LOCKS, TAILGATE WOULD NOT CLOSE VIA REMOTE OR OR BY PRESSING THE BUTTONS FOR THESE FUNCTIONS. NO INDICATION THAT THE LIGHTS WERE LEFT ON. 2 HOURS PRIOR THE CAR STARTED WITHOUT ISSUE. TOW WAS REQUESTED. TOW TRUCK DRIVER GAVE THE BATTERY A JUMPSTART AND TOLD ME TO LEAVE THE CAR RUNNING FOR 30 MINUTES WHILE THE SYSTEM RESET. THE SYSTEM DID NOT RESET. DASHBOARD ALERTS FOR TPMS PROBLEM, BRAKE SYSTEM PROBLEM, BRAKE HOLD PROBLEM AND VEHICLE STABILITY ASSISTANCE PROBLEM CONTINUED TO FLASH. THE VEHICLE WAS PARKED AT HOME IN DRIVEWAY FROM THE PREVIOUS EVENING. WE MOVED IT FORWARD TWO HOURS PRIOR TO ALLOW SPACE TO ROLL OUT OR TRASH CANS FOR GARBAGE COLLECTION. THE VEHICLE WAS PURCHASE ON JULY 30TH 2018 AND HAS 8322 MILES ON IT. NEVER EXPECTED TO HAVE AN ISSUE OF THIS SORT WITH A BRAND NEW VEHICLE. GRATEFUL THAT IT SHUTDOWN AT HOME RATHER THAN ON THE HIGHWAY

**Complaint Date: October 6, 2018       NHTSA ID Number: 11139129**

CAR STALLS WHEN GOING UP PARKING RAMP, CAR DIES AT INTERSECTION, CAR DOES NOT SENCE OBJECTS WHEN IN REVERSE, A BLUE LINE APPEARS WHEN RAINING AND I REVERSE OBSTRUCTION VIEW, ELECTRONICS FREEZE AND UNABLE TO USE TOUCH SCREEN...USUALLY HAPPENS WHEN RAINING CREATING A SAFETY HAZARD. BRAKES FAILED (PEDAL FROZE) IN REVERSE. SALESMAN SAID TO LET IT HAPPEN SEVERAL MORE TIMES BEFORE MAKING A SERVICE APPOINTMENT. THE CAR HAS BEEN A PROBLEM EVER SINCE I GOT IT EARLIER THIS YEAR...THERE IS ONLY 4,000 MILES ON IT AND SO FAR, THEY CHANGED THE BATTERY...EXPLANATION I WAS GIVEN IS THAT HONDA HAS BAD BATTERIES. THIS AFTER CHANGING OIL ONE WEEK PRIOR AND SERVICE REPORT INDICATED GOOD BATTERY. ONE WEEK AFTER SERVICING, THE CAR DIED AND HAD TO BE TOWED. THE SERVICE PEOPLE AT HONDA SAID IT WAS ALL DUE TO A BAD BATTERY. BRAKES FAILED DUE TO BAD BATTERY???? STILL HAVING PROBLEMS, CAR IS STALLING, PANEL FREEZES, SENSORS DON'T WORK...SALESMAN SAID

NO LOANERS AVAILABLE AND IF YOU WANTED A LOANER WHEN YOU SERVICE CAR, SHOULD HAVE BOUGHT A LEXUS OR BMW. THIS AFTER I DESCRIBED ALL THE PROBLEMS. REALLY UNHAPPY WITH THIS CAR. I BELIEVE IT'S A MAJOR SAFETY ISSUE.

**Complaint Date: August 3, 2018**          **NHTSA ID Number: 11115697**

DRAINING BATTERY SUSPECTED PARASITIC DRAIN. THE VEHICLE WAS ATTEMPTED TO START YESTERDAY AND THE BATTERY HAS LOW CHARGED (~7 VOLTS FROM MULTI-METER). THE VEHICLE WAS SITTING IN THE GARAGE FOR ABOUT 2 DAYS SINCE LAST USE. JUMPSTARTED THE VEHICLE WITH A JUMPER CABLE AND WAS DRIVEN FOR ABOUT 2 HOURS. AFTER DRIVING THE BATTERY HAD ABOUT ~14 VOLTS READING.

THE VEHICLE IS ~10500 MILES UNDER NORMAL USAGE. PURCHASED SEPT 2017. THIS IS THE SECOND TIME IT HAPPENED IN THE LAST 3 MONTHS. THE FIRST TIME WAS ~7-8K MILES

**Complaint Date: May 11, 2020**          **NHTSA ID Number: 11324191**

AFTER LEAVING VEHICLE IN GARAGE FOR 24 HOURS OR MORE, THEN ATTEMPTING TO START THE VEHICLE, VEHICLE WILL NOT START. AFTER USING BATTERY JUMP, VEHICLE WILL START AND RUN AS NORMAL. THIS HAS HAPPENED SEVERAL TIMES OVER THE PAST FEW MONTHS, EVEN WHEN VEHICLE IS RUN FOR COUPLE MILES OR MORE. *TR

**Complaint Date: July 22, 2019**          **NHTSA ID Number: 11279556**

WENT AWAY FOR A WEEKEND TRIP AND HADN'T DRIVEN THE CAR FOR 3 DAYS. CAME BACK AND THE BATTERY WAS TOTALLY DRAINED, HAD TO JUMP START THE CAR. IT HAS ROUGHLY 3,300 MILES ON THE ODOMETER. VEHICLE WAS STATIONARY.

62.     Like Accord owners, Honda CR-V owners complained about the Battery Defect on many other sites, including popular social media sites and Honda forums:

- We have a 2017 CRV, that we had the issue with the battery draining, and had the TSB done about a year ago and it has been fine since then, until the other morning.Wife went to start it, and it was dead, we jumped it off, and she went to work (30mile commute), that evening it cranked, but slowly. The next morning it was dead, jumped it off, she went to work, that evening it barely cranked but did and she drove the 30 miles home. After she got home, I thought it was probably the battery, and I'd just put a new battery in even though it was under warranty. Went to the parts place, and they tested the battery, and it tested fine. At the parts place it cranked fine, about 4 times, like it was fully charged. We went across the street, and got gas, and went to crank it, and it would not turn over, and the lights were barely on. Tried to open the hatch to get the jumper cables and it would not open on its own, I had to pull the hatch up. I checked the connections at the battery, and they are tight, I tried to wiggle them, and they would not move. I really wish this thing had a volt meter. We've got an appointment with the dealer tomorrow. Any ideas??[23]

- The battery is no good. Get a good one, or even better get a bigger than stock battery( group 35 ) and don't worry about your family being stranded again for a few years.[24]

- That's kinda what I'm thinking, and I don't really trust another Honda battery. I may get a new battery under warranty, but I may still buy another battery else where.[25]

---

[23] https://www.crvownersclub.com/threads/battery-starting-issue-2017-crv.199757/#post-1578063
[24] *Id.*
[25] *Id.*

- We have a 2016 and were having the same issue for over a year. Start, start, start...dead. Battery charged up fine. Carried a portable booster in case we had problems on the road (rarely). Battery always felt like it could barely start the car. Finally I tested the battery and found 2 dying cells. The battery was 3 only years old. I put a year old Honda Element battery in it (same size, about 75-100 more cranking amps). What a difference. Now starts are authoritative instead of weak.[26]

- [J]ust had the battery issue after 2 years. I had to jump start my CRV each time. I had to pay 200.00 for a new battery because I was over the 36,000 miles. Pretty crappy after you pay money and only get 2 years on the battery. Shame on you Honda![27]

- The battery in my LX is a 51R battery which is small. My 2015 Accord LX uses the same 51R( The V6 Accords had a larger battery). Not sure what battery the other trims of the CRv have. Many of *the 51r batteries failed before 3 years failed on the Accords if you look at the Accord forum. My battery on the Accord failed after 3 years. The specs on the OEM are 410 and the reserve time wasnt that great. I bought a Duralast gold 51r and the CCA were 500 and the reserve time was longer. The Honda battery specs were the same for the economy line battery at Advance Autoparts.*[28]

- After replacing the battery three times and getting only "We don't know" from dealer and "Sorry you are having battery problems" from Honda, I decided to get rid of it. This was necessary because my wife (it was her car) refused to drive it due to being stranded three times. The electrical system seemed to drain the battery over a 3-to 5 week time period. Making the problem more annoying the door locks were set on Auto after leaving the car. So you could not open the doors until battery was boosted. Honda refused to recognize the problem and only when I started "Lemon Law" activities did I

---

[26] *Id.*
[27] https://www.crvownersclub.com/threads/battery-starting-issue-2017-crv.199757/page-2
[28] *Id.*

get an offer to replace the vehicle. I hope the dealer sent the car out of state to sell, and I hope whoever got it has dumped it already.[29]

- Battery just died. Charged it for hours, started, died again later that day. Had AAA test, electrical system fine, battery at 140 CCA. Bought their 3/6 year battery, as it's my wife's car, so she's now got security of their warranty. $127. Major pain in the ass getting all the trouble codes and messages to disappear from dashboard, although there's no help in the manual. Internet had the answer, just go for a drive, but in the interim driving with multiple systems reporting problems! Pretty cheap damn battery, maybe 20 months since car new.[30]

- Tried to start my car and all I got was clicking with lights flashing on the dash. I called the HondaLink Roadside Assistance. They sent AAA to jump my battery. The AAA guy says he's jumped a lot of 2017 CR-V's with the same problem. I am taking the car to the dealer to see what solution they have for me.[31]

- Bought a 2019 new CRV honda in Jan 2019, from Burns Honda Marlton NJ twice I've had battery replaced despite the new software update. Battery replaced May 27 and July 10, 2019. They said it was a dead cell. Was told the first time it would be okay and now they are saying that the same. I don't think that they care. The problem still persists .It should be some legal action taken ie class action suit or lemon law. Replacing battery and software update did not help. Winter is not here yet[32]

- My 2019 crv battery has died twice, even after the recall update. It cannot sit more than 3 days. They suggested I get a Jump Start kit or make arrangements for someone to come and start it when I'm out of town .....really!! UNACCEPTABLE. It is new and I'm not standing for this. I will

---

[29] https://www.carcomplaints.com/Honda/CR-V/2017/electrical/battery_keeps_going_dead.shtml
[30] *Id.*
[31] *Id.*
[32] https://www.cargurus.com/Cars/Discussion-t84281_ds1013927

get a lawyer or whatever I have to do, up to includiing a new car!!!! Right now I hate this vehicle and would not recommend a Honda to anyone.[33]

- Same problem with my 2019 CRV purchased June 2019. Had sofware update which helped, but battery has still died twice in past few months (not helped by stay at home orders.) My battery read 10volts when it would not start, but will accept a charge and now starts --will drive to dealer before it dies again, accompanied by my angry customer routine.[34]

- My 2019 CRV was not started for 1 week due to the corona virus issue. When I tried to start it, 3/26/2020, the battery was dead, measured 5 volts. The 19-039 software update meant to solve this problem had been installed the previous September. I contacted Honda support via email. Their brilliant suggestion was to wait until it happens again and have the car towed to the dealer for diagnosis of the problem. The same thing happened to my brother who also owns a 2019 CRV. He DID have his towed to the dealer, they could find no cause. There is obviously a discharge problem that 19-039 did not solve and Honda will not admit to it. I now keep my CRV on a battery charger if I do not expect to drive it for more than two days. Sort of disappointing to have to do this with a car a little over 1 year old that I paid almost 30k for.[35]

- Three weeks ago, I went on a short trip. About 3 days long and came back to my Car being dead. I thought I may have left something on and so I jumped my car and it was fine. Fast forward to this weekend, I was home for the weekend, and did not drive my car for 2 days, I made sure before to checked that everything was off. However, when I came back to it, just 2 days without driving, it was dead again. I took it to the dealer and they checked the battery and said it was fine. I just needed to start or drive the car daily. Or if I go on trips, to take the battery out. I was wondering if this has happened to anyone else?[36]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] https://www.reddit.com/r/Honda/comments/9v3sjf/honda_crv_2017_battery_problems/

- There is a service bulletin to update the vsa software that stops a parasitic battery draw. I had the service bulletin done and still had the problem. Dealer just gave me a a new battery, we will see what happens...How long have you had the crv. Mine also 2017.[37]

- I remember hearing somewhere honda batteries are crappy. The one in my 2017 only lasted 3 1/2 years. Most batteries have no problems lasting 5 years. I got the highest CCA Interstate brand battery to replace it which was 100 CCA higher than the OEM[38]

- My 2017 had the same thing, they changed the battery after 14 months of owing and now just this week I have had it back and they told me I don't drive it enough. I have 13150 miles and had a charger on it last night all night and now had to call again in less than a week for a jump or tow. Never again will this oldgoat own a Honda.[39]

63.     In addition to being aware of the Defect through complaints posted on various Honda forums, popular social media sites, and the NHTSA, Honda directly learned of the Defect from its networks of dealerships through their service reports and repair orders for new batteries. Moreover, Honda's Quality Center "gathers quality-related data from dealers in Japan and overseas service departments and customer consultation centers."[40] Indeed, their battery collection

---

[37] *Id.*

[38] https://www.reddit.com/r/mechanics/comments/j44q8q/2017_honda_crv_exl_battery_issue_or_something_else/

[39] https://www.youtube.com/watch?v=PDbXSfk8Tu0

[40] https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf

program confirms both Defendants and their authorized dealerships were aware of the Defect.

64.     Despite its knowledge of the Battery Defect, Honda failed to disclose it to Plaintiffs and members of the Class.

### E. Honda Continues Selling the Class Vehicles While Concealing the Existence of the Defect

65.     Honda markets its vehicles as innovative, reliable and safe. For example, Honda marketed the 2018 Accord as a vehicle "at the forefront of safety" manufactured with "turbocharged engines" that deliver "instant gratification."[41] The 2019 Accord is described as an "unmatched combination of elegance and convenience."[42] Honda likewise represented the CR-V "delivers a wealth of standard features and conveniences" [43] "with performance that's as bold as it looks."[44]

66.     But despite Honda's representations, the Class Vehicles suffer from a defect that causes the battery to degrade prematurely and leaves drivers unable to start their car at unexpected times—a far cry from "instant gratification" or the "bold" performance promised to consumers.

---

[41] https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf

[42] https://blueprint.cdn.cloud.searchoptics.net/899e887d941bee0b8da1164419e3fd7e/2019%20Brochures/MY19_Honda_Cars_Brochure_1.pdf

[43] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2018/CR-V/2018-Updates/Brochure/MY18_CR-V_Brochure_Online_Mech1.pdf

[44] https://di-uploads-pod16.dealerinspire.com/pattypeckhonda/uploads/2019/12/2020-Honda-Utility-Family-Brochure_-REV2.pdf

67.     Despite their knowledge of the Battery Defect in the Class Vehicles, Defendants actively concealed the existence and nature of the Defect from Plaintiffs and Class members. Specifically, Defendants failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

    a.  any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the battery;

    b.  that the Class Vehicles, including the battery, were not in good in working order, were defective, and were not fit for their intended purposes; and

    c.  that the Class Vehicles and batteries were defective, despite the fact that Defendants knew of the Defect.

68.     It was possible for Honda to disclose the Defect in multiple ways that would have made the information available to reasonable consumers, such as through their brochures and marketing materials, owners' manuals, through dealerships and other agents, and elsewhere. Instead, Honda concealed this material information from Plaintiffs and other similarly situated consumers and continued to sell and lease the Class Vehicles.

69.     Honda discovered the Defect at least in February 2017 when it began sending notices about a no-start condition on 2016 and 2017 Honda Accords. Honda continued to monitor defective batteries in 2018-2019 through its battery collection program, which targeted Accords, CR-Vs, and Pilots—all vehicles with significant battery-functioning complaints. Despite Defendants' knowledge,

Defendants have failed to find an effective fix for the Defect and have never informed prospective buyers of the problem.

70.     As a result of Defendants' conduct, Class Vehicle owners and lessees have been deprived of the benefit of their bargain. They have lost use of the Class Vehicles, been exposed to dangerous conditions from being marooned without a working vehicle, and incurred lost time and out-of-pocket expenses, including payment for (1) alternative means of transportation (2) roadside assistance to tow or jump their cars, and (3) mobile jump packs, trickle chargers and other to preserve, charge or jump start their vehicle batteries. Class Vehicles have suffered a diminution in value due to the Defect.

71.     Had Plaintiffs and the Class Members known about the Defect, they would not have purchased or leased their Class Vehicles or would have paid significantly less in doing so.

**F. Defendants Have Unjustly Retained A Substantial Benefit**

72.     On information and belief, Plaintiffs allege that Defendants unlawfully failed to disclose the alleged defect to induce them and other putative Class members to purchase or lease the Class Vehicles.

73.     Plaintiffs further allege that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs.

74.     As discussed above, Plaintiffs allege that Defendants unlawfully induced them to purchase Class Vehicles by concealing and/or omitting a material fact (*i.e.*, the Defect) and that Plaintiffs would have paid less for the Class Vehicle, or not purchased it at all, had they known of the Defect.

75.     Accordingly, Defendants' ill-gotten gains—any and all benefits accrued in the form of increased sales and profits resulting from the material concealment and omissions that deceive consumers—should be disgorged.

## VII.   CLASS ALLEGATIONS

76.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the nationwide class consists of the following:

> **Nationwide Class**:
> All persons or entities in United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

77.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs Mastrangelo and Vasquez seek to represent the following state subclass only in the event that the Court declines to certify the Nationwide Class above:

> **California Subclass:**
> All person or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Subclass").

78.     The Nationwide Class and the California Subclass are referred to herein as the "Class." Plaintiffs reserve the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

79.     The Class excludes the following: Defendants, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case. Also excluded are any current or former owners or lessees of Class Vehicles with personal injury claims related to the Defect.

80.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. At least hundreds of thousands of Class members have been subjected to Defendants' conduct. The class is ascertainable by reference to records in the possession of HMA and HMC.

81.     *Predominance*: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions affecting individual members of the Class and include:

    a.  Whether the Class Vehicles were sold with a Defect;

    b.  Whether Defendants knew of the Defect at the time of sale;

    c.  Whether Defendants failed to disclose the Defect;

    d.  Whether Defendants actively concealed the Defect;

    e.  Whether a reasonable consumer would consider the Defect or its manifestation to be material;

    f.  Whether Defendants breached express and/or implied warranties;

    g.  Whether Defendants must disclose the Defect;

-58-

h. Whether Defendants violated consumer protection statutes and the other claims asserted herein; and

i. Whether Defendants retained an unjust benefit due to their conduct.

82.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Class Vehicles. All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Defendants' uniform course of conduct described herein.  Plaintiffs and all Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiffs and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendants' course of conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

83.    *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*,

breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

84.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

85.     *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

86.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

1
2
3
4

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY, U.C.C. § 2-313**
**(By Plaintiffs on Behalf of the Nationwide Class, and, in the alternative,**
**by Plaintiffs Mastrangelo and Vasquez on behalf of the California**
**Subclass)**

5
6
7

87.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

8
9
10

88.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, on behalf of the state subclass.

11
12
13
14
15

89.    "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1).[45]

16
17
18

90.    Defendants' warranty of the Class Vehicles is an express warranty within the meaning of U.C.C. § 2-313.

19
20

91.    The express warranty covers the Defect and any damage proximately caused by the Defect, including repair or replacement of the Class Vehicle.

21
22
23

92.    Plaintiffs and Class members reasonably and justifiably relied on Defendants' express warranty when purchasing the Class Vehicles.

24
25
26

93.    Defendants breached these warranties by selling and leasing Class Vehicles with the Defect and concealing the Defect from purchasers during the

27
28

---

[45] The statutory provisions adopting these provisions of the UCC for California can be found at Cal. Com. Code §§ 2313, 10210.

warranty period. Defendants further breached these warranties because the express warranty fails of its essential purpose to the extent it excludes the Defect because: (1) the Defect unreasonably hinders the safe, normal, and foreseeable use of the Class Vehicles; (2) the Defect is not caused by improper use, neglect, accident, or any other cause outside of Defendants' control; and (3) Defendants are unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

94. Any attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here.

95. Specifically, Defendants' warranty limitations as to time and mileage limits are unenforceable because they knowingly sold a defective product while concealing said defect from purchasers. Defendants compounded their unfair and deceptive behavior post sale when they continued to conceal the cause of the Defect, thus ensuring further damage to the Class Vehicles and increased costs to Class members.

96. Defendants' warranties are adhesive. A gross disparity in bargaining power existed between Defendants and the Class Members, and the Class had no meaningful choice in determining these warranty limitations, the terms of which unreasonably favored Defendants since the Defect may manifest outside the time and mileage limitations they set.

97.     Defendants breached the express warranty because the Defect constitutes a defect in material or workmanship and Defendants are unable or unwilling to provide an adequate, effective, and lasting remedy that would return the Class Vehicles to their warranted condition.

98.     Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein

99.     Defendants' breach deprived Plaintiffs and Class members of the benefit of the bargain.

100.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been injured and sustained damages.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(By Plaintiffs on Behalf of the Nationwide Class, and, in the alternative,**
**by Plaintiffs Mastrangelo and Vasquez on behalf of the California**
**Subclass)**

101.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

102.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, on behalf of the state subclass.

103.   Honda is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.[46]

104.   With respect to leases, Honda is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

105.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

106.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under the Uniform Commercial Code and relevant state law.

107.   Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Honda directly sold and marketed Class Vehicles to customers through authorized dealers, like those from whom Plaintiffs and members of the Class bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Honda knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiffs and members of the Class, with no modification to the defective batteries.

---

[46] The relevant state statutory provisions for the California can be found at Cal. Com. Code §§ 2314, 10212.

108.   Honda provided Plaintiffs and Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

109.   This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their batteries that were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their batteries would be fit for their intended use while the Class Vehicles were being operated.

110.   Contrary to the applicable implied warranties, the Class Vehicles and their batteries at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective materials, design and/or manufacture of their batteries. Honda knew of this defect at the time these sale or lease transactions occurred.

111.   As a result of Honda's breach of the applicable implied warranties, Plaintiffs and members of the Classes of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and members of the Classes were harmed and suffered actual damages in that the Class Vehicles' batteries are substantially certain to fail before their expected useful life has run.

112.   Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

113.   Plaintiffs and members of the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.

114.   Plaintiffs and members of the Class were not required to notify Honda of the breach because affording Honda a reasonable opportunity to cure its breach of warranty would have been futile. Honda was also on notice of the Defect from the complaints and service requests it received from Plaintiffs and the Class members, from repairs and/or replacements of the batteries or components thereof, and through other internal sources, including manufacturer communications regarding defective batteries, and a battery collection program.

115.   Plaintiffs and the other Class Members have had sufficient direct dealings with either Defendants or its agents, including its authorized dealerships, to establish privity with Defendants. Throughout the sales process, Honda communicated directly with Plaintiffs and Class Members through its agents such as their authorized dealerships. In addition, Honda directly communicated with Plaintiffs and Class Members through its advertising, including television ads, print ads, and online presence. The express warranty is provided by Honda directly to Plaintiffs and the Class. Defendants engaged in substantial conduct that

functionally places them in the role of direct seller, and Plaintiffs and other Class Members relied on Honda's direct representations regarding the quality, reliability, and functionality of the Class Vehicles in making their purchasing decisions.

116.   Regardless, privity is not required here. Plaintiffs and the Class are the intended third-party beneficiaries of contracts between Honda and its dealers. The dealerships were never intended to be the ultimate consumers of the Class Vehicles. They have no rights under the warranty agreements Defendants provided with the Class Vehicles—those inure to the consumer end-users only. Honda also understood Plaintiffs and Class Members expected the vehicles they purchased would provide reliable transportation, be free from known defects and generally not function as a safety hazard. Indeed, Honda delivered the Class Vehicles to Plaintiffs and other Class Members to meet those requirements.

117.   As a direct and proximate cause of Honda's breach, Plaintiffs and members of the Class suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiffs and members of the Class have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses.

118.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### COMMON LAW FRAUD
**(By Plaintiffs on Behalf of the Nationwide Class and, in the alternative, by Plaintiffs Mastrangelo and Vasquez on behalf of the California Subclass)**

119.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

120.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, on behalf of the state subclass.

121.   Honda committed fraud by failing to disclose and actively concealing, at the point of sale and otherwise, that the batteries in Class Vehicles are defective and pose a safety hazard. Through its authorized dealerships, website, and other marketing materials, Honda concealed the truth about the Defect, intending for Plaintiffs and the Class to rely—which they did.

122.   A reasonable consumer would not have expected the battery to suffer from the defect described herein. Plaintiffs and the members of the Class did not know of the facts which were concealed from them by Honda. Moreover, as consumers, Plaintiffs and the members of the Class did not, and could not, unravel the deception on their own. Defendants omitted information about the Battery Defect on their websites and marketing materials, as well as through oral communication through their authorized dealerships at the point of sale and point of service and repair.

123.   Honda had a duty to disclose the Defect. Honda had such a duty because the true facts were known and/or accessible only to it and because it knew these facts were not known or reasonably discoverable by Plaintiffs or the members of the Class.

124.   As a direct and proximate result of Honda's conduct, Plaintiffs and members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for battery diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

125.   Based on the foregoing, Plaintiffs are entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees and other reasonable costs. Plaintiffs and Class members request that the Court award equitable relief, including an order requiring Honda to adequately disclose and repair the Battery Defect and an order enjoining Honda from selling its vehicles with the defective batteries in the future.

126.   Honda's acts and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the classes; and to enrich themselves. Their misconduct warrants

an assessment of punitive damages in an amount sufficient to punish them and

deter such conduct in the future, which amount shall be determined according to

proof at trial.

## FOURTH CAUSE OF ACTION
**Violations of the Song-Beverly
Consumer Warranty Act
for Breach of Express Warranty
(Cal. Civ. Code §§ 1790-1795.8)
(by Plaintiffs Mastrangelo and Vasquez on behalf of the California Subclass)**

127.   Plaintiffs incorporate by reference each preceding paragraph as

though fully set here in.

128.   Plaintiffs Mastrangelo and Vasquez bring this claim individually and

on behalf of the California Subclass.

129.   Plaintiffs Mastrangelo and Vasquez and the California Subclass

members who purchased or leased the Class Vehicles are "buyers" within the

meaning of Cal. Civ. Code § 1791(b).

130.   The Class Vehicles are "consumer goods" within the meaning of Cal.

Civ. Code § 1791(a).

131.   Honda is a "manufacturer" of the Class Vehicles within the meaning

of Cal. Civ. Code. § 1791(j).

132.   Honda made express warranties to Plaintiffs and the California

Subclass within the meaning of Cal. Civ. Code. §§ 1791.2 & 1793.2(d).

133.   Honda breached these express warranties by selling and leasing defective Class Vehicles that required repair or replacement. Despite a reasonable number of attempted repairs across the Class, Honda has failed to adequately repair the Defect.

134.   Defendants' warranty limitations as to time and mileage limits are unenforceable because they knowingly sold a defective product while concealing said defect from purchasers.  Defendants compounded their unfair and deceptive behavior post sale when they continued to conceal the cause of the Defect, thus ensuring further damage to the Class Vehicles and increased costs to Class members. Plaintiffs had no meaningful choice in determining these warranty limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class Members, and Defendants knew or should have known that the Class Vehicle was defective at the time of sale and that the battery was substantially certain to fail and otherwise impact the utility and safety of the Class Vehicles.

135.   Honda has failed to promptly replace or buy back the vehicles of Plaintiffs and the proposed California Subclass as required under Cal. Civ. Code. § 1793.2(d)(2).

136.   As a direct and proximate result of Honda's breach of its express warranties, Plaintiffs Mastrangelo and Vasquez and the California Subclass received goods in a condition that substantially impairs their value to Plaintiffs and

-71-

the other Subclass members. Plaintiffs Mastrangelo and Vasquez and the Subclass members have been damaged as a result of, among other things, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, out-of-pocket costs incurred, actual and potential increased maintenance and repair costs, and actual and potential increased insurance costs.

137.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs Mastrangelo and Vasquez and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Vehicles or the overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

138.   Pursuant to Cal. Civ. Code § 1794(d), (e) Plaintiffs Mastrangelo and Vasquez and the California Subclass are entitled to reasonable costs and attorneys' fees.

**<u>FIFTH CAUSE OF ACTION</u>**
**Violations of the Song-Beverly**
**Consumer Warranty Act**
**for Breach of Implied Warranty**
**(Cal. Civ. Code §§ 1790-1795.8)**
**(by Plaintiffs Mastrangelo and Vasquez on behalf of the California Subclass)**

139.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

140.   Plaintiffs Mastrangelo and Vasquez bring this claim individually and on behalf of the California Subclass.

-72-

141.   Plaintiffs Mastrangelo and Vasquez and the California Subclass members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

142.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code. § 1791(a).

143.   Honda is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code. § 1791(j).

144.   Honda impliedly warranted to Plaintiff Vasquez that Class Vehicle was "merchantable" within the meaning of Cal. Civ. Code. §§ 1791.2 & 1792.

145.   Section 1791.1(a) provides that: "Implied warranty merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purposes for which such goods are used;

(3) Are adequately contained, packaged, and labelled;

(4) Conform to the promises or affirmations of fact made on the container or label.

146.   The Defect in the Class Vehicles is present in them when sold and substantially certain to manifest. The Class Vehicles would not pass without

objection in the automotive trade because the Defect causes substantially all of the

vehicles to experience battery drain and failure that impedes safe and legal driving.

The Defect thus affects the central functionality of the vehicle and poses a serious

safety risk to driver and passenger safety, leading to hundreds of dollars in repair

expenses, out of pocket costs to purchase mobile jump packs or roadside

assistance, and time-consuming and stressful service calls.

147.   Because the Defect creates an unreasonable risk to driver and

passenger safety, and because the Defect impedes safe and legal driving, the Class

Vehicles are not fit for the ordinary purposes for which such vehicles are used.

148.   Class Vehicles are not adequately labelled because the labelling fails

to disclose the Defect and does not advise the California Subclass of the Defect.

149.   Any attempt by Honda to disclaim its implied warranty obligations

under the Song-Beverly Act is ineffective due to its failure to adhere to Sections

1792.3 and 1792.4. Those sections of the Civil Code provide that, in order to

validly disclaim the implied warranty of merchantability, a manufacturer must "in

simple and concise language" state each of the following: "(1) The goods are being

sold on an 'as is' or 'with all faults' basis. (2) The entire rise as to the quality and

performance of the goods is with the buyer. (3) Should the goods prove defective

following their purchase, the buyer and not the manufacturer, distributor, or retailer

assumes the entire cost of all necessary servicing or repair." Cal. Civ. Code §

1792.4(a). Honda's attempted implied warranty disclaimer does not conform to these requirements.

150.   The Defect deprived Plaintiffs Mastrangelo and Vasquez and the California Subclass of the benefit of their bargain and has resulted in Class Vehicles being worth less than what Plaintiffs and members of the California Subclass paid.

151.   As a direct and proximate result of Honda's breach of its implied warranties, Plaintiffs Mastrangelo and Vasquez and the California Subclass received goods in a condition that substantially impairs their value to Plaintiffs and the other Subclass members. Plaintiffs Mastrangelo and Vasquez and the Subclass members have been damaged as a result of, among other things, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning battery, out-of-pocket costs incurred, actual and potential increased maintenance and repair costs, and actual and potential increased insurance costs.

152.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs Mastrangelo and Vasquez and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Vehicles or the overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

153.   Pursuant to Cal. Civ. Code. § 1794(d), (e) Plaintiffs Mastrangelo and Vasquez and the California Subclass are entitled to reasonable costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
**Violations of the California Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code. §§ 1750—1785)**
**(by Plaintiffs Mastrangelo and Vasquez, Individually and on Behalf of the California Subclass)**

154.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

155.   Plaintiffs Mastrangelo and Vasquez bring this claim on behalf of themselves and the California Subclass.

156.   Defendants are "persons" within the meaning of the Cal. Civ. Code. § 1761(c).

157.   Plaintiffs Mastrangelo and Vasquez, as well as members of the California Subclass, are "consumers" as defined under Cal. Civ. Code. § 1761(d).

158.   Class Vehicles are "goods" as defined under Cal. Civ. Code § 1761(a).

159.   The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code. § 1770(a).

160.   Honda engaged in unfair and/or deceptive acts in violation of the CLRA principally because it intentionally or negligently concealed and suppressed material facts concerning the Defect affecting the batteries of the Class Vehicles. Defendants accomplished this by failing to disclose the known risk of the battery draining without warning, denying warranty claims arising from the Defect, and denying the existence of the Defect. Honda's conduct violated at least the following CLRA provisions:

a.   Honda represented that the Class Vehicles have characteristics, uses, or benefits that they do not have, which is in violation of § 1770(a)(5);

b.   Honda represented that the Class Vehicles are of a particular standard, quality, or grade when, in fact, they are not, which is in violation of § 1770(a)(7);

c.   Honda advertised its Class Vehicles with the intent not to sell them as advertised, which is in violation of § 1770(a)(9);

d.   Honda represents that its Class Vehicles have been supplied in accordance with a previous representation when they have not, which is in violation of § 1770(a)(16); and

e.   Honda inserts an unconscionable provision into its warranty in violation of § 1770(a)(19).

161.   Honda's unfair and/or deceptive acts or practices repeatedly occurred in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and created a serious safety hazard for the public.

162.   Honda knew, should have known, or was reckless in not knowing that the Class Vehicles were defective, would fail prematurely, and were not suitable for their intended use.

163.   Honda was under a duty to Plaintiffs Mastrangelo and Vasquez and the California Subclass members to disclose the defective nature of the Class Vehicles and the Defect because:

   a.   The facts that Honda misrepresented to and concealed from Plaintiffs Mastrangelo and Vasquez and the other California Subclass members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease their Class Vehicles or pay a lesser price for them.

   b.   The Defect poses a serious risk and affects the central functionality of the vehicle because a vehicle with battery failure cannot be driven and may strand motorists in unsafe conditions.

164.   In failing to disclose the material Defect, Honda has knowingly and intentionally concealed material facts in breach of its duty to disclose.

165.   Plaintiffs Mastrangelo and Vasquez and the California Subclass have suffered injury in fact and actual damages resulting from Honda's material misrepresentations and omissions, including by paying an inflated purchase price for their Class Vehicles and incurring additional out-of-pocket expenses to deal with the Defect. Had Plaintiffs Mastrangelo and Vasquez and the California Subclass known about the defective nature of the Class Vehicles and the Defect, they would not have purchased or leased their Class vehicles or would have paid less in doing so.

166.   As a direct and proximate result of Honda's unfair and deceptive conduct, therefore, Plaintiffs Mastrangelo and Vasquez and the California Subclass have been harmed.

167.   This cause of action seeks injunctive relief and monetary damages. Plaintiff Vasquez—on behalf of herself and the California Subclass—sent a demand letter to Defendants via certified mail on or about September 29, 2020, pursuant to the requirements of the CLRA in order to provide the notice required by Cal. Civ. Code. § 1782(a). The CLRA letter advised Defendants that they are in violation of the CLRA and must correct, replace or otherwise remedy the Class Vehicles alleged to be in violation of Cal. Civ. Code. § 1770 as a result of the Defect. Defendants were further advised therein that in the event the relief requested was not provided within thirty (30) days, Plaintiff would amend the complaint to include a CLRA claim with a request for monetary damages. Over 30

days have now passed, and Defendants did not correct, replace, or otherwise

remedy the Class Vehicles and issues alleged in Plaintiff's CLRA notice or this

complaint within the statutorily prescribed 30-day period. Plaintiffs, therefore, seek

both injunctive relief and monetary damages (including compensatory and punitive

damages) against Defendants pursuant to the CLRA, Cal. Civ. Code §§ 1781 and

1782.

168.   Plaintiffs further seeks an order awarding costs of court and attorneys'

fees pursuant to Cal. Civ. Code § 1780(e).

169.   Plaintiff Mastrangelo and Vasquez's CLRA letter venue declarations

are attached hereto as Exhibit B in accordance with Cal. Civ. Code §§ 1780(d).

### SEVENTH CAUSE OF ACTION
### Violations of the California Unfair Competition Law
### ("UCL")
### (Cal. Civ. & Prof. Code §§ 17200-17210)
### (Plaintiffs Mastrangelo and Vasquez on Behalf of the California Subclass)

170.   Plaintiffs incorporate by reference each preceding paragraph as

though fully set forth herein.

171.   Plaintiffs Mastrangelo and Vasquez bring this claim individually and

on behalf of the California Subclass.

172.   The UCL proscribes acts of unfair competition, including "any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue

or misleading advertising." Cal. Bus. & Prof. Code § 17200. Honda's conduct

violates each of these prohibitions.

**Unlawful Conduct**

173.   Honda's conduct is unlawful because, as set forth herein, it violates the Song-Beverly Consumer Warranty Act and the CLRA, among other laws.

174.   Honda is aware of the Defect, which renders the Class Vehicles unreasonably susceptible to battery failure. Despite this knowledge, Honda sold the Class Vehicles to Plaintiffs Mastrangelo and Vasquez and the California Subclass; refused to notify Plaintiffs Mastrangelo and Vasquez and the California Subclass of the Defect; and refused to remediate the Class Vehicles to eliminate the Defect.

**Unfair Conduct**

175.   Honda's conduct is unfair because it violated California's public policy, including that legislatively declared in the Song-Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. The Defect impedes safe and lawful driving of the Class Vehicles.

176.   Honda acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

      a. Selling Plaintiffs and California Subclass members defective Class Vehicles;

      b. Failing to disclose the Defect despite the opportunity to do so in numerous locations that people in the market for a vehicle would be likely to encounter;

COMPLAINT

c.  Directing and furnishing replacement parts it knew would not adequately remedy the defect, and repairing defective parts with more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

d.  Failing to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market; and

e.  Failing to acknowledge the scope and severity of the Defect, which poses serious safety concerns, and refusing to acknowledge the Class Vehicles are defective and failing to provide adequate relief to Plaintiffs and California Subclass members.

177.   The gravity of the harm resulting from Honda's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Vehicles without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

178.   There are reasonably available alternatives that would further Honda's business interests in increasing sales and preventing false warranty claims. For example, Honda could have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect, and/or (b) disclosed the Defect prior to prospective consumers' purchases.

179.   The harm from Honda's unfair conduct was not reasonably avoidable by consumers. The Class Vehicles all suffer from the Defect, and Honda has failed to disclose it. Plaintiffs Mastrangelo and Vasquez and the California Subclass did not know of and had no reasonable means of discovering the Defect.

**Fraudulent Conduct**

180.   Honda's conduct is fraudulent in violation of the UCL. Honda's fraudulent acts include knowingly and intentionally concealing from Plaintiffs Mastrangelo and Vasquez and the California Subclass the existence of the Defect and falsely marketing and misrepresenting the Class Vehicles as being functional and not possessing a defect that impedes safe and lawful driving.

181.   Honda's misrepresentations and omissions alleged herein caused Plaintiffs and the California Subclass to purchase or lease their Class Vehicles or pay more than they would have had Honda disclosed the Defect.

182.   At all relevant times, Honda had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the vehicle and creates a safety risk for drivers and passengers, and because Honda made partial representations about the reliability, quality, and safety of the Class Vehicles but failed to fully disclose the Defect.

183.   Accordingly, Plaintiffs Mastrangelo and Vasquez and the California Subclass have suffered injuries in fact, including lost money or property, as a result of Honda's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiffs

Mastrangelo and Vasquez and the California Subclass would not have purchased or leased their Class Vehicles at the prices they paid or would not have purchased or leased them at all.

184.   Plaintiffs Mastrangelo and Vasquez and the California Subclass seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Honda from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiffs and the California Subclass any money Honda acquired by its unfair competition, including restitution. Plaintiffs also seeks reasonable attorneys' fees and expenses under applicable law

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(By Plaintiffs on Behalf of the Nationwide Class, and, in the alternative, by Plaintiffs Mastrangelo and Vasquez on behalf of the California Subclass)**

185.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph—as though fully set forth herein.

186.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, on behalf of their respective state subclasses.

187.   This claim is pled in the alternative to Plaintiffs' contract-based claims.

-84-

188.   Defendants knew or should have known that Plaintiffs and the Class paid for the Class Vehicles with the expectation that they would perform as represented and were free from defects.

189.   Plaintiffs and the Class conferred substantial benefits on Defendants by purchasing the defective Class Vehicles. Defendants knowingly and willingly accepted and enjoyed those benefits.

190.   Defendants' retention of these benefits is inequitable.

191.   As a direct and proximate cause of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.   Appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C.   Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

-85-

D.   Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants' to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate notice regarding the existence and cause of the Defect;

F.   Award reasonable attorney's fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs and the Class members hereby demand trial by jury of all issues triable as of right by jury.

Dated: February 8, 2021.

Respectfully submitted,

**BAIRD LAW FIRM,**

**/s/ William A. Baird**
William A. Baird, Esq.
w.baird.law@gmail.com
2625 Townsgate Road, 330
Westlake Village, Ca. 91361
Telephone: (805)-267-1209

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio *
Jason S. Rathod *

-86-

412 H Street NE, Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Email: nmigliaccio@classlawdc.com
Email: jrathod@classlawdc.com

**LEVIN SEDRAN BERMAN LLP**
Daniel C. Levin *
Charles E. Schaffer *
Nicholas J. Elia *
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Email: dlevin@lfsblaw.com
          cschaffer@lfsblaw.com
          nelia@lfsblaw.com

*Attorneys for Plaintiffs*

* *pro hac vice* admission to be sought

COMPLAINT